PETER B. OLSEN, County Clerk,

*v.*

THE PEOPLE *ex rel.* Henry Buenger *et al.*

*Opinion filed December 20, 1905.*

1. MARRIAGE AND DIVORCE—*act of 1905, prohibiting re-marriage within one year, is valid.* The act of 1905, (Laws of 1905, p. 194,) prohibiting a person divorced from husband or wife for cruelty or desertion from re-marriage within one year, is not invalid as being an amendment not within the title of the act it purports to amend, in that it relates to marriage instead of divorce.

2. SAME—*acts of 1905 do not infringe constitutional rights.* The acts of 1905, amending the Divorce act by prohibiting a person divorced from husband or wife for cruelty or desertion from re-marrying within one year, and the Marriage act by imposing a penalty on a county clerk who knowingly issues a license to persons legally incapable of contracting a marriage, do not infringe any constitutional rights.

3. SAME—*acts of 1905 apply to persons divorced before act took effect.* The right of a divorced person to marry does not depend upon the decree of divorce but upon the existing marriage laws, and hence the act of 1905 which prohibits the re-marriage of divorced persons for a certain period applies to all persons coming within its terms, even though they were divorced before the act took effect.

4. SAME—*duty of the county clerk where application is made for a marriage license.* Under section 13 of the Marriage act, as amended in 1905, (Laws of 1905, p. 319,) imposing a penalty on a county clerk who knowingly issues a marriage license to persons legally incapable of contracting a marriage, it is the duty of the county clerk to inquire whether the persons applying for a license are incompetent to marry under the provisions of the Divorce act.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

HARRY A. LEWIS, WILLIAM F. STRUCKMANN, and FRANK L. SHEPARD, for appellant:

Marriage is a status, and to enter into or continue in the same is not a vested right. The act of May 13, 1905, is not void as retrospective or *ex post facto.* The act applies to all

divorces within the proscribed period, even if granted prior to July 1, 1905. Bishop on Marriage, Divorce and Separation, (ed. of 1891,) secs. 1432, 1434, 1441, 1487, 1492, 1478-1480, 1483; Bishop on Marriage and Divorce, (6th ed.) secs. 304, 306*a*, 700; 1 Bishop on Stat. Crimes, sec. 138; 1 Bishop on Crim. Law, secs. 238, 239; *Elliott* v. *Elliott,* 38 Md. 357; *Owen* v. *Brackett,* 75 Tenn. 448; *Pennegar* v. *State,* 87 id. 244; *Brook* v. *Brook,* 9 H. of L. Cas. 219; *Strader* v. *Graham,* 10 How. 82; *Grogin* v. *Grogin,* 152 Mass. 533; *Cassidy* v. *Clark,* 62 Ga. 407; *Cox* v. *Combs,* 47 Ky. 231; *White* v. *White,* 105 Mass. 325.

ELMER E. LEDBETTER, for appellees:

As to what is an *ex post facto* law, see Bishop on Const. Lim. (4th ed.) 324; *Johnson* v. *People,* 173 Ill. 131.

If construed as a limitation upon marriage, simply, the act of May 13, 1905, is unconstitutional. Const. of 1870, art. 4, sec. 11; *People* v. *Nelson,* 133 Ill. 576.

The intent of the legislature must govern the literal interpretation of a statute. Endlich on Int. of Stat. sec. 295; *Soby* v. *People,* 134 Ill. 71; *Baird* v. *Hutchinson,* 179 id. 439; *Hogan* v. *Akin,* 181 id. 452; *Reinicke* v. *People,* 15 Ill. App. 244.

That the legislature did not intend the act in question to apply to parties divorced prior to the time at which it went into force is evidenced by the evil the act was designed to remedy, (*Soby* v. *People,* 134 Ill. 66; *People* v. *Kipley,* 171 id. 82; *Bobel* v. *People,* 173 id. 25; *Hogan* v. *Akin,* 181 id. 452; *People* v. *Harrison,* 191 id. 266;) and by the fact that the law in question is an amendment of the Divorce act. *Hogan* v. *Akin,* 181 Ill. 453.

This act is purely prospective, because it did not go into effect for some time after its enactment. Wade on Retroactive Laws, sec. 33.

A literal reading of a statute is frequently departed from. *Reinicke* v. *People,* 15 Ill. App. 245; *Railroad Co.* v. *Bin-*

*kert,* 106 Ill. 306; *Canal Comrs.* v. *Sanitary District,* 184 id. 604.

Past tense may be construed to mean future. *Melford* v. *Learned,* 16 Mass. 215.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the 21st day of August, 1905, the relator appellees, Henry Buenger and Eliza Grimes, applied to the appellant, the county clerk of the county of Cook, for a license to be joined in marriage. Eliza Grimes had been lawfully married to one Herman Mischler, and on the 28th day of June, 1905, a decree was entered in the circuit court of Cook county dissolving such marriage relation at the application of said Eliza, on the ground that her said husband had been guilty of extreme and repeated cruelty to her and had deserted and abandoned her. The county clerk refused to issue the marriage license, for the reason that the act of the General Assembly approved May 15, 1905, in force July 1, 1905, (Laws of 1905, p. 194,) declared that a person who had been formerly married and had been granted a divorce on the ground that his or her spouse had been guilty of extreme and repeated cruelty or desertion and abandonment should not marry again within one year from the time the decree for divorce was granted, and because sections 6 and 13 of the act "to revise the law in relation to marriages," approved February 27, 1874, (Rev. Stat. chap. 89,) as amended by the act of the legislature approved May 13, 1905, in force July 1, 1905, (Laws of 1905, p. 317,) prohibited the county clerk, under penalties and punishments therein specified, from issuing a license for the marriage of a person who was legally incapable of contracting a marriage. The relators thereupon filed their petition in the circuit court of Cook county for a writ of *mandamus* commanding the said county clerk to issue such marriage license to them. A demurrer was interposed and overruled, and the appellant

having elected to abide his demurrer the prayer of the petition was granted and judgment entered awarding the writ. The record is before us for review.

It is conceded that, in terms, the legislation of 1905 declared a person incapable of contracting marriage within one year after such person had been divorced, by decree of a court, from a former husband or wife on the ground of extreme and repeated cruelty or desertion and abandonment, for the statutory period. Appellees, however, contend that the decree divorcing the relator Eliza from her former husband was entered June 28 and prior to the time when such legislation came into force, and that therefore the enactments had no application to her right to a license to be remarried. We have carefully considered all that is urged in the brief of counsel in support of this contention. The prohibition of re-marriage within the specified time after the rendition of a decree of divorce is to be found in an additional section added to and as an amendment to the act entitled "An act to revise the law in relation to divorce," in force July 1, 1874, and it is argued that the title to that act is not broad enough to include legislation changing the statute providing for and with reference to the issuance of licenses to marry, and therefore cannot, within the constitutional intent, be held to apply to applications for the issuance of such licenses. This contention overlooks the fact that at the same session of 1905 of the General Assembly an act was adopted amending the act to revise the law in relation to marriage, approved February 27, 1874, under which licenses to marry were authorized to be issued. Section 6 of the amendment of 1905 to the Marriage law, among other things, made it the duty of the county clerk to obtain an affidavit from at least one of the parties contemplating the marriage, "for the purpose of ascertaining the age of the parties and the legality of the contemplated marriage." Section 13 of the said Marriage act, prior to the amendment of 1905, made the clerk liable to the payment of a fine in the

event he issued a license for the marriage of persons under legal age without the consent of the parent or guardian of such minor. By the amendment of 1905 to said section 13 the county clerk is declared to be guilty of a misdemeanor and made subject to a fine of not less than $100 nor more than $500 if he shall "knowingly issue a license for the marriage of persons who are legally incapable of contracting a marriage." It will thus be seen that the amendment of 1905 to the Divorce act is not an amendment to the marriage statutes, and therefore it was not necessary to state in the title to the divorce amendment anything with reference to marriages. The statute relating to marriages, as amended, does not, nor did it originally, purport to state all grounds which render persons incompetent to enter into the marriage relation. When application is made to the county clerk to issue a license to persons to marry by virtue of the provisions of the amendment to section 3, it becomes his duty to inquire into everything affecting the competency of the persons applying for the license to enter into such relation. His duty under this section, prior to the amendment, only required him to inquire as to the age of the parties. By the amendment it became his duty, in order to avoid liability to pay a fine, etc., to refer to the Divorce act, and determine whether such persons so applying, who had been divorced, were competent persons to marry.

The enactments are neither *ex post facto* laws nor does the construction we give them make them operate retrospectively. Decrees granting divorces which were entered before July 1, 1905, the date at which the acts, respectively, became effective, remain in full force and virtue and wholly unaffected by the enactments. That which is forbidden and made the subject of the imposition of penalties and of criminal punishment are acts of the parties after the first day of July, 1905. Prior to that date a person who had, within a period of less than one year, been divorced might have lawfully applied for and received license to re-marry, and the

clerk might lawfully have issued such license within that period. But under the amendatory acts the re-marriage of such divorced person within the prescribed period was prohibited, and that which is declared illegal and rendered punishable is the act subsequent to July 1, 1905, and is not any impairment of the decree of divorce. The right to re-marry does not accrue from a decree of divorce, but from the existing law regulating the issuance of licenses to marry. Prior to July 1, 1905, under the statute then in force, male persons over the age of seventeen years and females over the age of fourteen years were competent to enter the marriage relation. After the amendment of 1905 the age of competency to contract was raised and persons of those ages became no longer competent to be joined in marriage. The amendment, therefore, operated to render incompetent to marry after July 1, 1905, on the ground of nonage, persons who prior to that date could lawfully contract matrimony. As to persons who had been divorced after the passage of the amendatory act and before the first day of July, the amendatory legislation had the same effect, in that it so changed the existing law as to the right of persons to contract matrimony until the expiration of a specified time after the rendition of a decree of divorce.

No one will contend that it is not within the power of the legislature to raise the age of competency to contract and be joined in marriage though such enactment deprived persons of a privilege or right which they enjoyed under previous legislation, and it is equally clear that the fact that a party had been divorced from a previous marriage may be legally declared to constitute a disqualification to the right to receive license and contract a second marriage within a reasonable time specifically stated in the statute.

We think the statutes under consideration became operative and effective after July 1, 1905, infringed no constitutional right of the relators or either of them, and their provisions became obligatory upon the county clerk, and that

he properly refused to issue a license to the relators to inter-marry.

The judgment of the circuit court must therefore be reversed and the cause will be remanded.

*Reversed and remanded.*