Anna Boysen, Appellant, v. Rudolph Boysen, Appellee.

Gen. No. 40,692.

Opinion filed October 25, 1939.

Harry X. Cole, of Chicago, for appellant.

No appearance for appellee.

Mr. Justice Hebel delivered the opinion of the court.
This is an appeal by the plaintiff from a decree dismissing the plaintiff's bill of complaint. On October 31, 1938, the plaintiff filed her verified complaint for annulment of her marriage to the defendant, alleging that on April 4, A. D. 1938, and for a long time prior thereto and ever since, continuously and now, the parties hereto have been and are citizens and residents of Cook county, Illinois, and during all of that time had no intention of changing their citizenship or place of residence; that on April 4, 1938, through the

connivance and fraud of the defendant she' was tricked into representing to the clerk of the circuit court of Lake county, Indiana, that she was a legal resident of the county of Lake, for the purpose of obtaining a marriage license; that on April 18, A. D. 1938, through the connivance and fraud of the defendant she was further tricked into becoming a party with the defendant to a pretended ceremony of marriage in the city of Crown Point, Indiana; that the marriage was never consummated; that thereafter, on October 6, 1938, having come to believe and then believing that on account of the fact that the license was obtained by the defendant for the purpose of violating the statutory law of this State, and for other fraud and connivance against her by the defendant at and before the time, their said ceremony of marriage at Crown Point, Indiana, on April 18, 1938, was and is void, she ordered the defendant from her home and has not lived with him since.

On November 4, 1938, the defendant, appeared by counsel and filed his answer to the complaint. A hearing was had on the complaint and answer, and at the conclusion of the hearing the court dismissed the plaintiff's bill for want of equity. From the evidence of the plaintiff it appears that the plaintiff had lived in Cook county, Illinois 53 years immediately prior to the filing of her bill of complaint. The plaintiff stated that acting upon the instructions of the defendant, on April 4, 1938, when she and the defendant had obtained the license to marry in Lake county, Indiana, she had given her residence as Hammond, Indiana. The witness testified that she had never been a resident of Lake county, Indiana; the defendant had always lived in Chicago.

Upon examination by the court, the plaintiff stated she wanted to be married here in Chicago by a minister and have her friends and children here. However, the defendant suggested that they be married in Crown Point, Indiana. The defendant had, in the meantime,

driven to Crown Point and made arrangements to have the marriage take place there on a certain date. On April 18, 1938, the defendant came to her house to take her to Crown Point to be married; she did not know why the defendant selected Crown Point. When the plaintiff allowed the defendant to drive her to Crown Point for their marriage, she did not know that she "was doing anything that just wasn't one hundred per cent right." The plaintiff stated further that she had read the newspapers and knew that she had to go through certain treatments here. She had "been doctoring for years with a nervous disorder," and knew she was perfectly all right, and she knew that he had been to see his doctor before, too. When she signed a statement that she was a resident of Indiana, she knew she was lying. "It is the sorriest thing I ever did." The defendant did not say he lived in Indiana; he told her to say that; he said he lived in Chicago. The defendant told her to say she lived in Indiana, that it was the only way they could get married. The plaintiff had known the defendant for 40 years, ever since she was a little girl. The defendant was 57 years old.

Raymond Brockmeyer, a son of the plaintiff, stated that on April 18, 1938, his mother lived in Cook county, Illinois, and at all times prior to that date had been a resident of Cook county, Illinois. On April 18, 1938, the defendant had been a resident of Chicago, Cook county, Illinois, and prior to that date. Ella Hartley, related by marriage to the plaintiff, stated that both the parties were, and on April 18, 1938, had been residents of Chicago, Illinois, and were not residents of Indiana.

It is contended by the plaintiff in this action that the conduct of the defendant towards the plaintiff was fraudulent and vitiated the contract of marriage between the parties; that when the plaintiff, having learned the full extent and consequences of the fraud and imposture of the defendant towards her, filed her complaint to annul the marriage on October 31, 1938,

and points to par. 19, ch. 89 of the Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 78.21], entitled "Marriages" as follows:

"19. Prohibited marriages void if contracted in another state.] § 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That if any person residing and intending to continue to reside in this state and who is disabled or prohibited from contracting marriage under the laws of this state shall go into another state or country and there contract a marriage prohibited and declared void by the laws of this state, such marriage shall be null and void for all purposes in this state with the same effect as though such prohibited marriage had been entered into in this state." The plaintiff then calls the court's attention to par. 6 of the same statute [Jones Ill. Stats. Ann. 78.06], which provides:

"All persons about to be joined in marriage must first obtain a license therefor, from the County Clerk of the County in which such marriage is to take place, anything . . . to the contrary notwithstanding, which license must show:

"1. Their legal and full names, and places of residence.

"2. Their ages." And then the statute provides:

"Application for a marriage license must be made at least three days and not more than thirty days, before the license shall be issued, upon a form which the County Clerk shall furnish without charge." Paragraph 6a of the statute [Jones Ill. Stats. Ann. 78.06(1)] provides when the county clerk is authorized to issue a marriage license as follows:

"Examination for venereal disease.] § 6a. All persons desiring to marry shall within fifteen (15) days prior to the issuance of a license to marry, be examined by any duly licensed physician as to the existence or non-existence in such person of any venereal disease, and it shall be unlawful for the county clerk of any

court to issue a license to marry to any person who fails to present for filing with such county clerk a certificate setting forth that such person is free from venereal diseases. . . . '' And it is upon the provisions of the statute we have quoted that the plaintiff contends the marriage between her and the defendant is void, and being citizens of this State they violated the provisions of the statute by going to Indiana and having the marriage services performed in that State.

The defendant in this case has failed to file his appearance in this court so we should consider the questions which are involved as suggested by the plaintiff, who contends that the rule of *par delictum* will not be applied, however, to prevent relief in suit to annul and set aside a void marriage, and further suggests that the defendant had made arrangements to have the marriage take place in Crown Point, Indiana; that he had driven there twice and made arrangements to have the ceremony take place at a certain date, and the plaintiff has called our attention to the provision of the statute under section 6a, ch. 89, relating to marriage, which is as follows:

"EXAMINATION FOR VENEREAL DISEASE.] § 6a. All persons desiring to marry shall within fifteen (15) days prior to the issuance of a license to marry, be examined by any duly licensed physician as to the existence or non-existence in such person of any venereal disease, and it shall be unlawful for the county clerk of any court to issue a license to marry to any person who fails to present for filing with such county clerk a certificate setting forth that such person is free from venereal diseases . . . '' and relies upon par. 19, sec. 1 of ch. 89 of the statute, which provides:

"19. PROHIBITED MARRIAGES VOID IF CONTRACTED IN ANOTHER STATE.] § 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That if any person residing and intending to continue to reside in this state and who is disabled or pro-

hibited from contracting marriage under the laws of this state shall go into another state or country and there contract a marriage prohibited and declared void by the laws of this state, such marriage shall be null and void for all purposes in this state with the same effect as though such prohibited marriage had been entered into in this state.''

The fact is clear that the plaintiff as well as the defendant was a resident of the State of Illinois, and the plaintiff contends that the marriage is void by reason of the section of the statute quoted above. In support of plaintiff's contention the suggestion is made that the phrase in par. 19, sec. 1 of ch. 89, ''disabled or prohibited from contracting marriage under the laws of this state'' under the terms of this statute must be construed to extend to one, who as in this case, went over to the State of Indiana to avoid physical examination for venereal disease. This statute makes the violation a misdemeanor. As this statute is made to govern the citizens of Illinois, when such a citizen goes to Indiana and violates its provisions, it is claimed that he violates this statute constructively when he returns to this State and lives in the marital relation.

The parties to this action returned to Chicago, and it is further stated that when the plaintiff learned of the doubtful validity of the marriage she promptly denounced it and ceased to live with the defendant.

There is no evidence in the record other than that of the plaintiff, and it is contended that when the defendant told the plaintiff, in relation to the proposed ceremony in Indiana, ''It's the only way we can get married and you have to say it,'' meaning that she was obliged to state that she was a resident of the State of Indiana, he misled her.

From the plaintiff's brief it is evident that she relies largely upon the statute relating to examination for venereal disease.

In the case of *People v. Ham*, 206 Ill. App. 543, which was presented on appeal to this court, it was held that marriage without the parents' consent, where one or both of the parties are under age, is not void but is voidable at the option of the party under disability. We there said, in part:

"In Illinois, 'the general rule is that unless the statute expressly declares a marriage contracted without the necessary consent of the parents, or other requirements of the statute, to be a nullity, such statutes will be construed to be directory, only, in this respect, so that the marriage will be held valid although disobedience of the statute may entail penalties on the licensing or officiating authorities.' *Reifschneider v. Reifschneider*, 241 Ill. 92; *Campbell v. Beck*, 50 Ill. 171; *Olsen v. People*, 219 Ill. 40, and 26 Cyc. 835.

"Neither the statutes of Illinois nor Missouri declare that marriages under a certain age without the parents' consent are void. The provisions fixing the age of consent, requiring the consent of the parents and imposing penalties on the clerk for issuing a license and on officers for celebrating a marriage in violation of the provisions of the statute, are only directory and not prohibitive. *Reifschneider v. Reifschneider, supra; State v. Bittick*, 103 Mo. 183; Bishop on Marriage & Divorce, secs. 423–449 and 551–556. The marriage of the relator and Ethel Ham must be held to be a valid marriage until declared void by some direct proceeding."

This court in passing upon the question involved in that case said as to a marriage contracted in a foreign State which does not comply with the requirements of the statute of this State, where the marriage is not declared null and void, that, by this particular statute, the direction of the clerk to issue a license is directory only and not prohibitive. This applies to the facts as we find them in the record in this case, for the venereal disease act does not declare that a marriage celebrated

without complying with that statute shall be null and void.

A provision of the statute relating to marriage and the existence or nonexistence in such person of any venereal disease is that it shall be unlawful for the county clerk of any court to issue a license to marry to any person who fails to present for filing a certificate such as is required by the act, and is the only prohibitive clause in the act. However, the plaintiff contends that the superior court had jurisdiction to annul and should have annulled the marriage as prayed for in plaintiff's complaint and that the court erred in dismissing the bill for want of equity.

From a consideration of the facts and the law as presented to this court, we are of the opinion that the court was fully justified and did not err in entering the order appealed from.

*Order affirmed.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.