KATHRYN E. REIFSCHNEIDER, Appellee, *vs.* WALTER E. REIFSCHNEIDER, Appellant.

*Opinion filed June 16, 1909—Petition stricken October 7, 1909.*

1. MARRIAGE—*legality of marriage in foreign State is adjudged by its laws.* The legality of a marriage taking place in a foreign State, when questioned in Illinois, is to be adjudged by the laws of the foreign State.

2. SAME—*presumption in favor of validity of marriage if ceremony is proven.* Where a marriage ceremony is shown, the law raises a strong presumption in favor of the validity of the marriage, and one who asserts its invalidity has the burden of proving such facts and circumstances as necessarily establish its invalidity.

3. SAME—*effect of failure to obtain consent of parents.* Unless the statute expressly declares that a marriage contracted without the necessary consent of parents or compliance with other preliminary requirements shall be a nullity, such requirements will, as a general rule, be held to be directory, only, and the marriage will be upheld though the disregard of the statutory requirements may entail penalties upon the licensing or officiating authorities.

4. SAME—*when a marriage in Indiana is not void.* A marriage in Indiana between residents of Illinois is not invalid though the license was obtained in Indiana and the parties, respectively, eighteen and nineteen years of age, did not have the required consent of their parents or guardians, where both parties were capable of contracting the marriage under the laws of Indiana, the ceremony was performed by a properly authorized official, and it appears the parties went to Indiana solely to keep the marriage, which they both believed to be legal, a secret.

5. SEPARATE MAINTENANCE—*a wife residing in a foreign State may bring separate maintenance suit in Illinois.* A wife residing in a foreign State apart from her husband without her fault may maintain a separate maintenance suit in Illinois in the county where the husband resides.

6. SAME—*temporary alimony may be allowed where ceremony is admitted.* Temporary alimony may be properly allowed in a separate maintenance proceeding, where the defendant, in his answer to the rule to show cause, admits that there was a marriage ceremony but denies that the marriage was legal.

7. SAME—*allowance of alimony is largely a matter of discretion.* Whether alimony shall be allowed, and in what amount, is largely a matter of discretion with the trial court, and while such

discretion is subject to review it will not ordinarily be disturbed, on appeal, unless it has been clearly abused.

8. APPEALS AND ERRORS—*when certificate of importance is not necessary on appeal in separate maintenance.* Where the validity of the marriage, and not merely the amount of alimony, is directly involved on appeal to the Supreme Court from the Appellate Court in a separate maintenance proceeding, the fact that the amount of alimony does not exceed $1000 does not require that a certificate of importance be obtained.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

April 3, 1907, appellee filed in the circuit court of Cook county a bill for separate maintenance against appellant, alleging their marriage on August 13, 1904, and that appellee had lived with appellant as his wife until about February 26, 1905, when she was compelled to separate from him. After the filing of the bill and before the filing of appellant's answer an order was entered by the court that appellant pay appellee five dollars each week for her support. Failing to comply with the order a rule was entered against appellant to show cause why he should not be attached for contempt of court. In his answer to the latter order appellant stated that he had been out of employment and was without any means or property out of which to pay said sum of five dollars per week, also setting up that the alleged marriage was illegal and void, as both parties thereto were minors and the parents of neither had given their consent to the marriage, and for the further reason that within a few months after the alleged marriage the parties thereto had agreed to disregard any marriage contracted between them, and that appellee shortly thereafter took up her residence in Pittsburg and had never requested appellant to live with her or support her. April 25, 1907, the appellant filed his answer denying the marriage and all

other allegations set out in the bill. May 8, 1907, the court ordered appellant to pay appellee, on account of solicitor's fees, the sum of $50, and also entered an order committing him to jail for failure to pay the alimony as previously ordered by the court, there being $10 due at that time. From such order of commitment appellant appealed to the Appellate Court.

On a hearing of the suit for separate maintenance the court found for appellee; that appellant was able to provide for her, and that he pay her the sum of $7.50 per week from the date of the entry of the decree, $14.60 which appellee had paid out to enable her to prosecute her suit, and the sum of $100 for her solicitor's fees, and also costs of suit. From this decree an appeal was taken to the Appellate Court, where it was consolidated with the appeal from the contempt order. The Appellate Court affirmed the decree of the trial court in both appeals. Further appeals were prosecuted to this court from the judgments of the Appellate Court in both cases. The two cases were consolidated and heard together here on one record.

JOHN GIBSON HALE, for appellant.

ROBERT P. BATES, and WILLIAM H. EMRICH, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

August 13, 1904, the parties to this litigation, one being a little more and the other a little less than nineteen years of age, went to Hammond, Indiana, from their homes in Chicago for the purpose of being married, and the ceremony was there performed by the city judge of Hammond. They had become acquainted in a high school in Chicago which they had recently been attending, and had been keeping company and were engaged for some time previous. Appellant expressed a desire that they be married but that

it be kept secret until he became of age, on the ground that he was not able to support a wife. He told no one about the ceremony being performed, but appellee told her sister and a housekeeper in her father's house the evening she came back from Hammond. Her mother was dead. From that time she lived at her father's house in Chicago until his death and appellant lived at the home of his mother. In September, 1904, appellee obtained a position where she earned $30 a month. At the time of their alleged marriage appellant was earning $9 a week. It appears from the testimony that he never gave appellee any money for her support and he testified he could not support her. In February, 1905, appellant's mother found the marriage certificate and called up appellee on the telephone and asked her to come to her (appellant's mother's) home. Appellant, his mother, appellee and her brother-in-law, were present and the marriage was discussed. It appears that at this conference appellant's mother wished them to start housekeeping and that appellee expressed a willingness to do so, while appellant, although not doing much talking, stated that he would not live with appellee,—that he could not support her. Appellee's brother-in-law offered them a home with himself and his wife until they could get settled in a flat of their own. While the testimony is not in entire harmony as to what took place there, it is plain that no agreement was reached because appellant refused to live with appellee. The evidence shows that after the marriage appellant called on appellee at her father's home nearly every evening until the conference just referred to. The appellant testified that they had sexual intercourse within two or three days after the marriage ceremony, in the belief that they were married, and it is quite evident from the testimony that such sexual relations were continued until the conference of February, 1905.

An exemplified copy of the marriage license issued by the clerk of the circuit court of Lake county, Indiana, and

a marriage certificate signed by the city judge of Hammond, Indiana, were both introduced in evidence. Counsel for appellant urges many objections to both of these documents being introduced. We deem it sufficient to say that they were properly authenticated and received in evidence. I Bishop on Marriage and Divorce, (5th ed.) secs. 463, 473; *Tucker* v. *People,* 122 Ill. 583; Hurd's Stat. 1908, chap. 89, sec. 12, p. 1400.

Appellant contends that the marriage was not in conformity with the statutes of Indiana, and therefore not valid. The legality of this marriage must be adjudged by the laws of Indiana. *Lyon* v. *Lyon,* 230 Ill. 366; *McDeed* v. *McDeed,* 67 id. 545; *Butler* v. *Butler,* 161 id. 451; *Canale* v. *People,* 177 id. 219; 26 Cyc. 829.

The Revised Statutes of Indiana were introduced on the trial of the cause below. Section 7292 of said statutes provides that "before any persons, except members of the Society of Friends, shall be joined in marriage they shall produce a license from the clerk of the circuit court of the county in which the female resides, directed to any person empowered by law to solemnize marriages, and authorizing him to join together the persons therein named as husband and wife." Proper proof was made that the city judge of Hammond had authority to perform the marriage ceremony. Counsel for appellant contends that the testimony of both appellant and appellee shows that no license was obtained. Appellee's testimony shows that she understood from appellant that he obtained a license. His testimony on this subject is very vague and uncertain. The mere fact that Hammond, Indiana, is shown not to have been the county seat does not prove that a proper license was not obtained before the marriage ceremony, from the clerk of the circuit court. Furthermore, section 7295 of the Indiana statutes provides that "no marriage shall be void or voidable for want of license or other formality required by law if either of the parties thereto believed it to be a legal mar-

riage at the time." Manifestly, from the evidence already referred to, both parties to this marriage contract believed it was legal at the time, and there is no contradiction of the fact that the ceremony was performed. ' This court, in *Cartwright* v. *McGown,* 121 Ill. 388, said, on page 396: "When the celebration of a marriage is once shown, the contract of marriage, the capacity of the parties, and, in fact, everything necessary to the validity of the marriage, .in the absence of proof to the contrary, will be presumed." The parties to this marriage were capable of assenting to and did assent to the marriage ceremony. Their relations thereafter showed that they understood they were married. When a marriage is shown the law raises a strong presumption in favor of its validity, and the burden is cast upon the party objecting to the validity to prove such facts and circumstances as necessarily establish its invalidity. *Jones* v. *Gilbert,* 135 Ill. 27.

Counsel for appellant argues that the parties intended to conceal their marriage and not live together openly for two years, and that this proves they were never legally married. This contention cannot be sustained. The authorities he cites on this point were cases where no marriage ceremony was performed and where it was contended that a common law marriage had taken place. These authorities are not in point.

It is contended that the license was illegal because the Indiana statute already quoted required the license from the circuit clerk to be obtained in the county where the female resided, and the appellee did not reside in Lake county, Indiana; that the marriage was invalid for the further reason that the Indiana statute required that when minors were married they should obtain the consent of their parents. The Indiana statute in force at the time of this marriage ceremony provided that males of the age of eighteen and females of the age of sixteen years were capable of entering into the marriage contract. Appellant gave his age

to the public official in Indiana as twenty-two. The argument is also made that the marriage is invalid because the contracting parties went to Indiana to avoid the Illinois law, which required them to have the consent of their parents or guardians before the marriage ceremony could be performed. The proof indicates they had the marriage performed in Indiana, rather than in this State, in order to keep it a secret, and for no other purpose. Apparently neither of the contracting parties was familiar with the requirements of either the Illinois or Indiana statutes as to marriage. Our attention has not been called to any provision of the Indiana law that rendered the marriage ceremony void for any of these reasons and we are aware of no provision in the Illinois statutes to that effect. The general rule is, that unless the statute expressly declares a marriage contracted without the necessary consent of the parents, or other requirements of the statute, to be a nullity, such statutes will be construed to be directory, only, in this respect, so that the marriage will be held valid although the disobedience of the statute may entail penalties on the licensing or officiating authorities. (26 Cyc. 835, and authorities there cited; see, also, *Campbell* v. *Beck,* 50 Ill. 171; *Olsen* v. *People,* 219 id. 40.) We think, under section 7295 of the Indiana statute heretofore quoted and the authorities already cited, that these contentions of appellant cannot be upheld.

Appellant, in 1905, brought suit in the superior court of Cook county to annul the marriage, alleging that it was invalid. This bill appears to have been dismissed for want of equity. The pleadings in that case were introduced but they do not seem to have been made a part of the record or bill of exceptions. There may be good ground for urging, although we cannot, from the facts shown in the record, make a definite finding as to this point, that the decree dismissing the bill for want of equity is *res judicata* as to the validity of the marriage.

Appellant further contends that appellee was without authority, under our law, to file the bill here in question in this State, as she was a resident of Pennsylvania, and not of Illinois, at the time. Some time after this marriage took place her father died, and a short time thereafter she went to live with an aunt in Pennsylvania. Generally speaking, the residence of the wife follows that of the husband. (*Ashbaugh* v. *Ashbaugh,* 17 Ill. 476; *Davis* v. *Davis,* 30 id. 180; *Dorsey* v. *Brigham,* 177 id. 250.) Our attention has been called by counsel for appellant on this point to *Way* v. *Way,* 64 Ill. 406, *Chapman* v. *Chapman,* 129 id. 386, *Hill* v. *Hill,* 166 id. 54, and *Becklenberg* v. *Becklenberg,* 232 id. 120, as holding that under the circumstances shown on this record appellee's residence was not in Illinois. We need not decide as to their application as these cases were all divorce proceedings, and the statute as to divorce is worded somewhat differently on the question of residence from the statute governing proceedings as to separate maintenance. This latter provides that the wife may institute proceedings "in the county where the husband resides." (Hurd's Stat. 1908, p. 1181.) Obviously, the separate maintenance statute gave the appellee the authority to commence the proceedings in this State in the county where appellant resided. The marriage being legal, it was the husband's duty to provide appellee a home, and this he failed to do. She was living apart from him through no fault of her own.

Appellant contends that the trial court improperly ordered the payment of temporary alimony when the fact of the marriage was in dispute. Appellant's answer to the rule to show cause why he should not pay this alimony admitted the fact of the marriage ceremony but denied its validity. Temporary alimony *pendente lite* may be allowed without a marriage being proved, though a *prima facie* case should be required to be shown in behalf of the wife. (2 Am. & Eng. Ency. of Law,—2d ed.—p. 101, and cases

there cited.) The marriage ceremony being admitted and only the legality questioned, the court was justified in allowing temporary alimony. It is no objection to the allowance of alimony pending the wife's bill for separate maintenance that the husband denies the facts alleged by her. The court may, if it deems necessary, enter into a sufficient examination to determine the good faith of the complainant in exhibiting her bill, which will ordinarily be confined to an inspection of the pleadings. *Harding* v. *Harding,* 144 Ill. 588; *Cooper* v. *Cooper,* 185 id. 163.

The appellant also contends, in this connection, that the court allowed excessive alimony and solicitor's fees in view of the financial condition of appellant. The record shows that since his marriage he has received some help from his mother and that at the time of the hearing he was earning $15 a week. It was also admitted that under the will of appellant's grandfather his mother was to receive the income from a life estate to be paid her annually, the value of which, according to the trustee's report, was over $150,-000 in 1905, which estate, upon the death of appellant's mother, was to be distributed equally among the surviving children or their descendants. Appellant has no present interest in this estate and no other property. Whether alimony shall be allowed, and the amount, rests in the sound judicial discretion of the court, to be exercised in view of the nature and conditions of each case. While the abuse of the discretion is necessarily subject to review, unless there has been clearly such an abuse the decree will ordinarily not be disturbed on appeal. (*Harding* v. *Harding, supra.*) We do not think there is any such abuse shown on this record.

Counsel for appellant further contends that the answer of appellant to the rule to show cause why he should not be committed for non-payment of the $10 alimony showed clearly that he was unable to pay it and that therefore the

court was without authority to commit him. Appellant has persistently refused from the first to pay any alimony, and while his salary is not large, he has had sufficient means to litigate these two suits, not only in the Appellate Court but in this court. We think, on the record before us, the order committing him for failure to pay $10 alimony was fully justified. See on this point *Barclay* v. *Barclay,* 184 Ill. 471.

Appellee made a motion in this court to dismiss the cause, no certificate of importance having been given by the Appellate Court, because under the statute no appeal could be taken from the judgment of the Appellate Court to this court, citing in support of this contention, *Umlauf* v. *Umlauf,* 103 Ill. 651, *Miles* v. *Miles,* 200 id. 524, and *Kouka* v. *Kouka,* 221 id. 98. These authorities hold, in effect, that when the temporary alimony ordered by the trial court does not exceed $1000, and that is the only question raised by the assignments of error in this court, no appeal is allowed from the Appellate Court; but it is plainly intimated in those decisions that if the legality of the marriage were involved the appeal might be allowed. This court, in discussing former section 90, (now section 121 of the Practice act, Hurd's Stat. 1908, p. 1639,) in *Baber* v. *Pittsburg, Cincinnati and St. Louis Railway Co.* 93 Ill. 342, said, on page 355: "Inasmuch as the ninetieth section and the provisions of the eighth section, [of Appellate Court act,] which relate to the specific classes therein provided for, have reference only to such legal proceedings as are instituted to recover either chattels or money, it follows that there is yet another class of cases which do not directly involve property rights, and, therefore, do not fall within either of the three classes above mentioned. This class of cases will include bills for divorce, actions of *mandamus,* and certain classes of bills for injunctions, where they are not, in effect, brought to recover chattels or a money demand. In all cases of this character, not directly involving

property rights, an appeal or writ of error lies without regard to the magnitude of the interests involved." To the same effect are *Hyslop* v. *Finch,* 99 Ill. 171, and *Chalcraft* v. *Louisville, Evansville and St. Louis Railroad Co.* 113 id. 86. The appeal in this case directly involved the validity of the marriage, without regard to the magnitude of the interests involved. The motion to dismiss must therefore be refused.

The judgments of the Appellate Court, both as to the commitment for contempt for failure to pay the temporary alimony and the decree awarding separate maintenance with allowance for support and solicitor's fees, will be affirmed.

*Judgments affirmed.*