A. J. Williford, Appellant, v. Mary J. Williford, Appellee.

1. DIVORCE—*appropriate procedure where cross-bill seeking separate maintenance is interposed.* It is proper to set down for hearing and submit to the same jury the issues made upon an original bill for divorce and a cross-bill for separate maintenance, and this certain method of procedure is none the less correct even though a finding of the jury

upon one bill would have the force and effect of a verdict at law and the finding of the jury upon the other bill would be merely advisory.

2. SEPARATE MAINTENANCE—*when allowance of alimony not disturbed.* An allowance of alimony is largely discretionary with the chancellor and the exercise of such discretion will not be interfered with on appeal unless it clearly appears that such discretion has been abused to the prejudice of the complaining party.

3. APPEALS AND ERRORS—*when appeal does not lie.* A party cannot appeal from an order with which he has complied.

Appeal from the Circuit Court of Montgomery county; the Hon. J. R. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1910. Affirmed in part and reversed in part. Opinion filed May 26, 1911. Rehearing denied and opinion slightly modified June 16, 1911.

D. R. KINDI ʀ and LANE & COOPER, for appellant.

HILL & BULLINGTON and HOGAN & WALLACE, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

On January 7, 1909, appellant filed his bill for divorce against appellee alleging desertion. Appellee answered the bill denying its allegations and filed her cross-bill against appellant for separate maintenance and also her petition for the allowance of temporary alimony and for solicitor's fees. Appellant answered the cross-bill denying its allegations, and also filed an amendment to his original bill, charging appellee with extreme and repeated cruelty, to which amendment appellee filed her answer denying its allegations. At the January term, 1909, the chancellor ordered appellant to pay to appellee on February 1st, $185, and $60 per month thereafter, the sum of $125 out of the first payment of $185 to be paid by the clerk to appellee's solicitors. At the April term, 1909, upon her supplemental petition for an additional allowance of alimony and solicitors' fees, appellant was ordered to pay appellee $100 per month for alimony and to pay to her solicitors the further sum of $75. Appellant has fully paid the said several amounts as ordered. At the November term, 1909, upon motion of appellee the chancellor directed the issue upon the original bill and amendment thereto to-

gether with the issue under the cross-bill, to be submitted to a jury, the interrogatories to the jury upon said issues being formulated, as follows:

"1. Was the defendant, Mary J. Williford, guilty of wilful desertion for a period of more than 2 years prior to January 7th, 1909?

"2. Was the defendant in the original bill, Mary J. Williford, guilty of extreme and repeated cruelty towards her hus- · band, the complainant?

"3. Was the complainant in the cross bill, Mary J. Williford, living separate and apart from the defendant in the cross bill, Andrew J. Williford, without fault on her part?"

Upon the trial the jury answered the first and second interrogatories in the negative and the third interrogatory in the affirmative, and thereupon the chancellor entered a decree dismissing the original bill and amendment thereto for want of equity and finding the issues under the cross-bill in favor of the appellee and that she was entitled to separate maintenance; that appellant pay to appellee $60 per month for the support of herself and her two minor children; that appellee be permitted to occupy the homestead with the household goods, furniture and fixtures therein belonging to the family and that appellant pay all the taxes levied thereon from year to year; that appellant pay the costs and also pay to appellee an additional sum of $400 for her solicitors' fees.

Appellant and appellee were married in 1883, and prior to the commencement of these proceedings had seven children of whom four survive. At the time of the trial Kathleen, a married daughter, resided in Ohio, and Bessie aged 24, Allen aged 17 and Louis aged 16 resided with appellee in the family homestead in Nokomis. From 1907 to January, 1909, appellant and appellee permanently occupied separate rooms in their home, and have not since cohabited as man and wife; and on the latter date appellant left his home and has since resided elsewhere in Nokomis. Whether the separation in the house was brought about at the instigation of appellant or of appellee is controverted in the evidence, but we are disposed to believe that appellant was primarily responsible

therefor. The charge of extreme and repeated cruelty in appellant's amended bill finds its sole support in the testimony of appellant who says that on the night of December 13, 1907, appellee kicked him violently on his right leg below the knee, and that on the Sunday following she struck him twice violently. These incidents are denied by appellee and her denial is corroborated by the testimony of Bessie and Allen Williford. Neither the charge of desertion as alleged in the original bill nor the charge of extreme and repeated cruelty as alleged in the amended bill is sustained by the proof and the jury were fully warranted in so finding.

That appellee is a woman of nervous temperament and jealous disposition we have no doubt, and there is evidence tending to show that her treatment of appellant has not always been marked by kindness and wifely affection, but there is nothing in the evidence which in law justifies the conduct of appellant in leaving appellee, his children and his home.

Appellant charges that appellee has embittered and prejudiced their children against him without any justification, and that they are wholly under her influence and control. Such charges would have more semblance of truth if the children were of tender years and had been removed from personal contact with appellant, but it is almost incredible that a daughter of the age of 24 years and two sons of the ages, respectively, of 16 and 17 years, coming into daily personal contact with their father, should be so influenced against him without cause. The daughter Bessie testifies that upon one occasion after her father and mother had been engaged in a quarrel or controversy, she said to him, "Why don't you tell the truth and say you are trying to treat mother mean so you will drive her to get a divorce?" and he replied, "I am frank to admit it." The sons Allen and Louis testify to substantially the same conversation between Bessie and their father.

It is uncontroverted that prior to the commencement of these proceedings, appellant submitted to appellee certain written propositions in substance, as follows: First, that she should go away and not return to any place within a distance

of less than 75 miles of Nokomis, and receive $30 per month alimony; second, that she should go to Oklahoma, establish a residence there and obtain a divorce on the ground of desertion, he not to contest the suit and she to receive all of his personal property except household goods; third, that she should make what defense she could to his suit for divorce. We are fully persuaded that the evidence warranted a finding that appellee was living separate and apart from appellant without her fault.

It is urged that the chancellor improperly submitted the issues under the original and amended bills and the cross-bill to the same jury, and that appellant was prejudiced thereby. A separate hearing upon the original and amended bills would have necessarily involved a consideration of substantially the same facts and circumstances involved in the issues under the cross-bill, and there was no impropriety in submitting all the issues to the same jury. The same procedure was adopted in Reifschneider v. Reifschneider, 241 Ill. 92. True, the submission to a jury of the issues involved under the original bill for divorce and the amendment thereto was a matter of right upon the application of either party and the finding of a jury upon such issues had the same force and effect as a verdict in an action at law, while the submission to a jury of the issue under the cross-bill was wholly discretionary with the chancellor, and the finding of the jury upon such issue was advisory only, but these considerations do not preclude the adoption of the procedure followed in this case.

It is insisted that the allowance to appellee of alimony *pendente lite,* and of solicitors' fees amounting to $200, was unauthorized and improper. The record discloses that appellant had fully paid the several amounts so allowed and it is elementary that he cannot appeal from an order with which he has complied.

It is also insisted that the alimony awarded to appellee for the support of herself and two minor children, of $60 per month, and the possession and use of the homestead and most of the household furniture, with the requirement that appellant shall pay the taxes on the homestead and household furni-

ture, is excessive. It has been repeatedly held that the allowance of alimony is largely discretionary with the chancellor and that the exercise of such discretion will not be interfered with on appeal unless it clearly appears that such discretion has been abused to the prejudice of the complaining party. Johnson v. Johnson 125 Ill. 510; Aurand v. Aurand, 157 Ill. 321; Harding v. Harding, 180 Ill. 481; Reifschneider v. Reifschneider, 241 Ill. 92.

The evidence discloses that appellant receives a salary of $2,500 per annum as cashier of the Nokomis National Bank; that he owns ten shares of the capital stock of the bank, worth about $2,000, and that he owns the homestead property and household furniture valued at $4,000 free from encumbrance. We think that the discretion exercised by the chancellor was not unwarranted and that the alimony awarded to appellee in her present situation is not excessive.

It is also urged that the final allowance to appellee of $400 for her solicitors' fees, making a total of $600 which appellant is required to pay for appellee's solicitors' fees, is excessive. The trial of the case in court occupied two days and presented no complicated or unusual questions. While the amount to be allowed for solicitors' fees is within the discretion of the chancellor and the exercise of such discretion should not be disregarded unless it clearly appears that it has been abused, we are of the opinion that the additional allowance to appellee of $400 for solicitors' fees was unwarranted and excessive.

The decree will be affirmed in all respects except the allowance to appellee of $400 for her solicitors' fees, and in that respect the decree will be reversed. Three-fourths of the costs in this court will be taxed against appellant and one-fourth against appellee.

*Affirmed in part and reversed in part.*