Herbert A. Matthes by Margaret Matthes, Appellant, v. Florence Matthes, Appellee.

Gen. No. 21,265.

1. MARRIAGE, § 12*—*when justices of the peace have power to perform marriages.* Section 60 of the Municipal Court Act (J. & A. ¶ 3377), abolishing the office of justice of the peace in the City of Chicago, applies only to the judicial acts of such justices, and does not affect the power granted to such justices by section 4 of the Marriage Act (J. & A. ¶ 7348) to perform marriages.

2. MARRIAGE, § 12*—*what is nature of power of judicial officers to perform marriages.* Justices of the peace and other judicial officers empowered by section 4 of the Marriage Act (J. & A. ¶ 7348) to perform marriages are so authorized merely as persons holding certain offices and not by reason of the judicial powers incident to their offices.

3. MARRIAGE, § 21*—*when marriage presumed valid.* In actions involving the validity of a marriage, the public is to be safeguarded by resolving all doubts in favor of the validity of the marriage.

4. MARRIAGE, § 8*—*when marriage of minors without consent of parents valid.* Section 3 of the Marriage Act (J. & A. ¶ 7347), providing that a male minor of the age of eighteen and upwards and a female minor of the age of sixteen and upwards may marry with the consent of their parents or guardians given in a prescribed manner, is merely directory, there being no words or prohibition

or nullification, and a want of such consent will not invalidate the marriage.

5. INFANTS, § 20*—*what is reason for rule upholding validity of contracts of marriage of minors above age of consent.* The rule that marriages of minors above the age of consent are binding contracts is an exception to the ordinary rule regarding the contracts of minors, the reason being that the body politic is directly interested in the stability of the marriage relation.

6. MARRIAGE—*what is effect of statutes designating age at which persons may contract marriage.* Statutes designating the age at which persons may contract marriage are to be regarded as raising the age of consent as established by the common law.

7. MARRIAGE—*what was effect of statute raising age of consent for marriage.* Section 3 of the Marriage Act (J. & A. ¶ 7347), providing that a male minor of the age of eighteen and upwards and a female minor of the age of sixteen and upwards may marry under certain conditions was intended by the legislature to raise the age of consent or discretion from fourteen and twelve years respectively, as established by the common law, to eighteen and sixteen years respectively.

8. MARRIAGE, § 29*—*when marriage between minors below age of consent may be annulled.* A marriage between minors under the ages established by section 3 of the Marriage Act (J. & A. ¶ 7347) may be annulled by either party before arriving at the age of consent.

9. MARRIAGE, § 16*—*how marriage between persons under age of consent rendered valid.* A marriage between persons under the ages prescribed by section 3 of the Marriage Act (J. & A. ¶ 7347) is valid if after arriving at the age of consent the parties continue the marriage relation, they being deemed in such case to have ratified the marriage.

10. MARRIAGE, § 8*—*when failure to file consent of parent to marriage of minor not conclusive as to age of minor.* In a suit to annul a marriage on the ground, *inter alia,* of the nonage of the husband, the fact that the consent of complainant's parent was not filed as required by section 3 of the Marriage Act (J. & A. ¶ 7347) is not conclusive as to the age of the complainant at the time of the marriage, the statute being merely directory.

11. APPEAL AND ERROR, § 1271*—*when presumed that chancellor considered questions of fact and law and determined controverted questions of law in favor of complainant.* In a suit to annul a marriage on the ground, *inter alia,* of the nonage of complainant at the time of the marriage, where the bill was dismissed for want of equity, it must be presumed, in the absence of anything in the record to show the contrary, that the chancellor, in so dismissing

*See **Illinois Notes Digest, Vols. XI to XV,** and **Cumulative Quarterly,** same topic and section number.

the bill, considered the question as one of fact as well as of law, and that all controverted questions of law were determined in favor of the defendant.

12. MARRIAGE, § 26*—*when evidence to rebut presumption of validity of marriage sufficient.* The presumption which arises in the absence of evidence to the contrary that a marriage is regular and valid may be rebutted, but the rebutting evidence must be strong, distinct, satisfactory and conclusive.

13. MARRIAGE, § 26*—*when evidence sufficient to sustain finding in favor of validity of marriage.* A finding in favor of the validity of a marriage will be sustained if there is any evidence to support it.

14. MARRIAGE, § 29*—*when marriage relation not dissolved.* Since the standard of public morals is in large measure affected by the degree of vigilance exercised to preserve the sanctity of marriage, the courts view with a jealous eye any attempt to tear asunder the bonds of matrimony.

15. EVIDENCE, § 475*—*when chancellor may consider demeanor of witnesses in determining preponderance of evidence.* A chancellor hearing the evidence in a suit to annul a marriage on the ground of the nonage of one of the parties has the right, where the evidence is conflicting, to take into consideration the appearance and demeanor of the witnesses on the stand in determining where the preponderance lies.

16. APPEAL AND ERROR, § 1395*—*when finding of chancellor not disturbed on appeal.* A court of review will not disturb the finding of a chancellor who sees the witnesses and hears them testify unless it can be seen from the whole testimony that the finding is clearly and manifestly against the weight of the evidence.

17. MARRIAGE, § 29*—*when finding for defendant in suit to annul marriage sustained by evidence.* In a suit to annul a marriage on the ground of the nonage of one of the parties at the time of the marriage, and on other grounds, where the evidence was conflicting, a finding for the defendant *held* not clearly and manifestly against the weight of the evidence.

Appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed April 12, 1916. Rehearing denied April 26, 1916.

GEORGE C. GUTHRIE, for appellant; HARRY F. BREWER, of counsel.

A. H. MARSHALL, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Presiding Justice Pam delivered the opinion of the court.

This is an appeal from a decree dismissing for want of equity the bill of complainant (appellant) to annul his marriage with the defendant (appellee).

The amended bill of complaint (which was filed November 6, 1913) alleged that a marriage ceremony was performed between the parties hereto on March 20, 1913; that at the time of said marriage complainant was under the age of eighteen years; that under the statute of our State he was therefore not capable of consenting to or entering into a marriage contract. The bill further alleged that complainant did not enter into said marriage with voluntary consent but was compelled to do so by force and under duress, and set forth facts in support of such allegation; and finally, that the marriage ceremony was performed by a justice of the peace residing in Oak Park, Illinois, whose jurisdiction was limited to Cook county outside of the confines of the City of Chicago; that by reason of the Municipal Court Act said justice had no authority to perform a marriage ceremony within the limits of Chicago; for all of which reasons complainant prayed that said marriage be annulled.

Defendant in her answer neither admitted nor denied complainant's age as alleged in the bill, but stated on information and belief that he was older than eighteen years at the time the ceremony was performed, having been so informed by the complainant himself; that immediately following said marriage, complainant and defendant began living together as husband and wife, and continued to do so until about May 23, 1913; that complainant appeared in person before the county clerk of Cook county on March 20, 1913, and applied for a marriage license for himself and defendant, and that he made affidavit at that time that he was twenty-one years old. The answer further denied that

complainant was entitled to have the said marriage annulled.

The first point raised by complainant is that a justice of the peace cannot perform a valid marriage ceremony in the City of Chicago, because the office of justice of the peace has been abolished in the City of Chicago. In this we cannot concur.

Section 4 of our Marriage Act, Rev. St., ch. 89 (J. & A. ¶ 7348), provides that marriages may be celebrated either by a judge of any court of record, by a justice of the peace, etc. Section 60 of our Municipal Court Act, Rev. St., ch. 37 (J. & A. ¶ 3377), abolishes the office of justice of the peace in the City of Chicago, but in our opinion this provision has reference only to judicial acts of a justice of the peace. Such persons are authorized to perform marriage ceremonies not by reason of the judicial powers incident to their office but merely as persons holding certain positions. The solemnization of the marriage in question was an act with which the Municipal Court Act has no concern.

Our attention has been directed to *Bashaw v. State,* 1 Yerg. (Tenn.) 177, as being opposed to this view. In that case the marriage was solemnized in one county by a justice of the peace whose jurisdiction was in another county. The validity of the marriage was assailed on the ground that the officiating justice was acting outside his jurisdiction, and the court held the marriage invalid on the ground that a justice of the peace had no jurisdiction whatever outside his county. The court in its opinion made no distinction between judicial and ministerial acts. However, this decision is not in accord with the principle that now appertains as to safeguarding the public by resolving all questions of doubt in favor of the validity of a marriage. (*Reifschneider v. Reifschneider,* 241 Ill. 92, 97; *Jones v. Gilbert,* 135 Ill. 27.)

The main contention of complainant, however, is that the marriage is void because at the time it was

entered into he was under the age of consent according to the provisions of section 3 of our Marriage Act (J. & A. ¶ 7347) *supra,* which provides as follows:

"Male persons of the age of 21 years and upwards, and female persons of the age of 18 years and upwards, may contract and be joined in marriage: *Provided,* that a male person of eighteen years of age and upwards or a female person sixteen (16) years of age and upwards may contract a legal marriage if the parent or guardian of such person shall appear before the county clerk in the county where such minor person resides, and shall make affidavit that he or she is the parent or guardian of said minor and give consent to the marriage."

Complainant maintains that the foregoing section raises the age of consent, from fourteen in males and twelve in females, as at common law, to eighteen and sixteen years respectively; that the age of consent having been raised by act of Legislature in our State, any marriage entered into by a male person under eighteen or a female person under sixteen years of age is void or voidable, and can therefore be annulled or affirmed by either party upon attaining the legal age of consent.

Defendant contends, however, that inasmuch as the section relied upon by counsel for complainant does not contain any direct prohibition or any act of nullification, it is merely directory, and that the common-law age of consent is not thereby repealed, hence a person having attained the common-law age of consent may enter into a valid marriage.

The precise question as raised by these contentions has never been passed on in this State. In *Reifschneider v. Reifschneider, supra,* the facts differ from those here before us. In that case both parties to the marriage were more than eighteen years of age but the consent of the parents was lacking. The court held that in the absence of express words of nullification or prohibition in our statute, the language with respect to the consent of the parents was merely directory and

did not render the marriage invalid. This principle of law has been adhered to by the courts in other States where similar statutes obtain, and in connection with these decisions must be borne in mind the fact that the parties there involved had at least reached the age of consent. In the case at bar, however, the contention of the complainant is based upon the presumption that he was less than eighteen years of age at the time the marriage in question was entered into. The holding valid of a marriage contract entered into by minors above the common-law age of consent is an exception to the ordinary rule with reference to contracts of minors. There can be no question that this exception exists because of the fact that a marriage contract differs from all other contracts in its far-reaching consequences to the body politic which is directly interested in and is never indifferent to the importance to the State of maintaining the stability of the marriage contract. Our Legislature, in passing the provision with reference to the age at which persons may contract marriage and in designating eighteen as the age of males and sixteen years as the age of females, was but following the general trend in that direction. The reason therefor is well set forth in *Shafher v. State,* 20 Ohio 1. In that case the question arose whether or not the age of consent had been raised by such statute, and the court said, p. 4:

"Although the marriage relation has its foundation in nature, and is indispensable to the moral improvement and happiness of mankind, a great variety is found to exist in the municipal regulations of civilized states as to the age at which it may be lawfully entered into. Nature has fixed no precise period, and each state must for itself, by fixed and reasonable rules, regulate the matter with regard to its own peculiar circumstances. The common law, as is well known, borrowed from the Roman law, fixed the age at fourteen in males and twelve in females. The code Napoleon fixed it at eighteen in males and fifteen in females.

In some of the states of this Union the common law rule prevails, and in others the matter is regulated by statute. In Massachusetts and Illinois it is fixed at seventeen in males and fourteen in females; (as it then existed in Illinois) Michigan and Indiana follow the provisions of our own law. This diversity of regulation is not in all cases accidental. Nature herself in many cases demands such variation. An age that would be right and proper in Spain and Italy would not be adapted to Norway and Sweden. A state of society and a system of policy that makes marriage in many cases a convenient means of controlling estates and confining property in particular channels, as in Great Britain, is best subserved by allowing marriages at a period of life when parental influence and authority is not likely to be overcome by the strong current of affection and independence incident to maturer years. But such a regulation would be poorly adapted to a state of society like our own, where no such policy is to be promoted, where fidelity to the marriage vow has all the sanctity of a religious sentiment, and where all experience has shown that the blessings of the marriage relation can only be realized when entered into with the utmost freedom of choice, and between persons of matured judgment and discretion.''

The opinion in *People v. Slack*, 15 Mich. 192, is also illuminating on this point. In that case Mr. Justice Cooley, speaking for the court, said, p. 197:

"The age of legal consent is fixed by our statute at eighteen in males and sixteen in females (citing statute); and it is provided by another section that, 'In case of a marriage solemnized when either of the parties was under the age of legal consent, if they shall separate during such non-age, and not cohabit together afterwards, * * * the marriage shall be deemed void without any decree of divorce or other legal process.' (citing statute). It was suggested, rather than urged, on the argument, that the age of legal consent intended by the section quoted, was that of the common law, which, in the case of females, would be twelve years; but we think there is no foundation for this suggestion. When one part of the statute fixes

the age of consent, we should do violence to the plain intent of the legislature if we should hold that the 'age of legal consent' mentioned in any other part of the same statute meant anything else than the legal age thus fixed. The common law rule having been abrogated in this state, there is nothing to which we can refer this phraseology but the rule which the statute has thus substituted.''

The court therefore clearly held that the words ''age of legal consent'' must be held to mean the age of eighteen and sixteen as fixed by the statute.

In numerous other decisions wherein similar statutes were construed, the courts adopted the reasoning in the aforesaid cases, holding that where a statute designates the age at which persons may contract marriage, even in the absence of words of prohibition or nullification, such provision must be regarded as raising the age of consent as established by the common law. *State v. Lowell,* 78 Minn. 166; *Beggs v. State,* 55 Ala. 108; *Eliot v. Eliot,* 77 Wis. 634, 46 N. W. 806; *Willits v. Willits,* 76 Neb. 228, 107 N. W. 379; *Fitzpatrick v. Fitzpatrick,* 6 Nev. 63; *Hunt v. Hunt,* 23 Okla. 490, 22 L. R. A. (N. S.) 1202, 100 Pac. 541. The leading case to the contrary, and relied upon by defendant, is that of *Goodwin v. Thompson,* 2 (Greene) Iowa 329. However, we are in accord with the reasoning employed in the foregoing cases, and as they represent the weight of authority, we are of the opinion that when our Legislature designated who may contract marriage it was their intention to raise the age of discretion or consent from fourteen and twelve years, as established by the common law, to that of eighteen and sixteen years respectively; therefore, if a marriage is performed between people under such age it may be annulled by either party before arriving at the age of consent. Necessarily, if after arriving at the age of consent the parties should continue the marriage relation, then they must be considered to have ratified same and the marriage thereby becomes valid and binding.

In the case at bar, however, the question is not only one of law but also one of fact, viz., whether the evidence shows that complainant was under the age of eighteen years at the time he entered into the marriage. If the chancellor's decree of dismissal was based upon the finding that complainant was more than eighteen years of age and less than twenty-one at the time of entering into the marriage, then the holding in *Reifschneider v. Reifschneider, supra,* is decisive. The fact that the consent of complainant's parent was not filed with the county clerk, as provided for in our statute, is not controlling, because, as held in *Reifschneider v. Reifschneider, supra,* that provision, in the absence of prohibitory language or words of nullification, is merely directory. Had the court found that complainant was more than twenty-one years of age, the question necessarily would not have arisen.

In connection with the question of fact as to the actual age of the complainant was the further question whether or not he had really assented to the marriage, i. e., whether he entered into it as his free and voluntary act or as the result of coercion and duress.

In the absence of anything in the record to show the contrary, it must be presumed that the court; in dismissing the bill for want of equity, did not consider it a question only of law, but also one of fact, and that all controverted questions of fact were determined in favor of the defendant. The law is well established that in the absence of evidence to the contrary, an actual marriage is presumed regular and valid, and though such presumption may be rebutted, yet evidence of invalidating facts must be strong, distinct, satisfactory and conclusive; and if there is any evidence to support a finding in favor of the marriage it will be sustained. (26 Cyc. 897, and cases there cited.) In following this rule of law, the courts no doubt were actuated by the fact that the marriage relation had a direct bearing upon the welfare of the community, es-

pecially with reference to the protection of any children born of such marriage, as in the case at bar. The standard of public morals is, in a great measure, affected by the degree of vigilance exercised to preserve the sanctity of this sacred institution, and for this reason alone our courts have adopted the salutary policy of viewing with a jealous eye any attempt to tear asunder the bonds of matrimony.

A marriage had been performed and the parties thereto had entered upon the marital relation and a child was afterwards born. On the questions whether complainant was of nonage or whether the marriage was procured by duress or fraud, the evidence was conflicting. The chancellor found for the defendant. He saw and heard the witnesses testify and was in a more advantageous position than we now are, to determine where the preponderance lay. He had the right to take into consideration the appearance and demeanor of the witnesses while on the stand. We should not be warranted in disturbing his finding unless it is clearly and manifestly against the weight of the evidence. In *Phelan v. Hyland,* 197 Ill. 395, the court said on this point, p. 397:

"The rule has been often announced by this court that where the chancellor sees the witnesses and hears them testify, we will not disturb his finding and decree unless we can see, from the whole testimony, that it is manifestly against the weight of the evidence."

To the same effect are *Delaney v. Delaney,* 175 Ill. 187, and *Burgett v. Osborne,* 172 Ill. 227. In *Calvert v. Carpenter,* 96 Ill. 63, Mr. Justice Mulkey, in delivering the opinion of the court, said, p. 67:

"It can scarcely be repeated too often, that the judge and jury who try a case in the court below have vastly superior advantages for the ascertainment of truth and the detection of falsehood over this court sitting as a court of review. All we can do is to follow with the eye the cold words of the witness as transcribed upon the record, knowing at the same time, from actual

experience, that more or less of what the witness actually did say is always lost in the process of transcription. But the main difficulty does not lie here. There is an inherent impossibility of determining with any degree of accuracy what credit is justly due to a witness from merely reading the words spoken by him, even if there were no doubt as to the identity of the words. However artful a corrupt witness may be, there is generally, under the pressure of a skillful cross-examination, something in his manner or bearing on the stand that betrays him, and thereby destroys the force of his testimony. Many of the real tests of truth by which the artful witness is exposed, in the very nature of things can not be transcribed upon the record, and hence they can never be considered by this court.''

Having in mind the views so clearly expressed in the foregoing decisions, and after a careful examination of the record, we cannot say that the finding of the court on the questions of fact in issue is clearly and manifestly against the weight of the evidence. The decree must therefore be affirmed.

*Affirmed.*