## Pearl Bevan Lincoln, Appellant, v. Mary C. Riley, Administratrix, Appellee.

1. MARRIAGE, § 2*—*what law governs.* The law of the State where a marriage takes place controls as to its validity, and if the marriage is valid where celebrated, it is valid in Illinois.

2. MARRIAGE, § 2*—*what marriages are invalid.* The general rule that a marriage, valid where celebrated, is valid everywhere else does not apply to marriages which are contrary to the laws of nature, as generally recognized by Christian countries, nor to those which are declared invalid by the positive law of the State in which it is sought to establish them.

3. MARRIAGE, § 21*—*when marriage is presumed invalid.* A marriage between two citizens of Illinois celebrated in Missouri in less than a year after one of them obtained a divorce in Illinois is contrary to the declared public policy of Illinois and will not be presumed to have been a lawful marriage under the laws of Missouri, the statutes of the latter State not having been introduced in evidence.

4. DIVORCE, § 1*—*common law.* There is no common law governing divorce.

5. CONFLICT OF LAWS, § 9*—*what presumption obtains as to foreign laws.* In the absence of proof of the statute laws of another State, they will be presumed to be the same as the *lex fori*, where there is no common-law rule or legal presumption to the contrary.

6. MARRIAGE, § 21*—*what is effect of presumption of valid marriage.* Even though the presumption can be indulged that the marriage between two citizens of Illinois celebrated in Missouri was lawful under the laws of Missouri, it would not render such marriage valid in Illinois, if the parties went to Missouri to be married solely to evade the laws of Illinois.

7. MARRIAGE, § 26*—*what evidence is insufficient to validate foreign marriage.* Where an Illinois citizen went to Missouri and married another Illinois citizen the day after the latter had secured a divorce in Illinois, both stating to the licensing officer and to the officiating minister that they were residents of Illinois, and the husband had no employment in the 3 months they lived in Missouri, there being no evidence that he seriously sought any nor of any other fact tending to show an intention actually to establish a residence and become a citizen of Missouri beyond the bare statement of the wife in a proceeding by her to establish the marriage that such was

---

*See **Illinois Notes Digest**, Vols. XI to XV, and **Cumulative Quarterly**, same topic and section number.

the fact, such evidence is insufficient to validate the marriage in Illinois, in view of the prohibition in Rev. St. ch. 40, sec. 1-A (J. & A. ¶ 4216) against the marriage of a divorced person within one year after the granting of the decree.

8. APPEAL AND ERROR, § 340*—*who may object to denial of motion to intervene.* One who seeks to intervene is the only one who can complain that the lower court erred in denying its motion for leave to file an intervening petition.

Appeal from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 27, 1920.

COSTIGAN & WOLLRAB, for appellant.

A. E. and R. C. DE MANGE, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

James J. Crosby, a resident of Bloomington, McLean county, Illinois, was accidentally killed on November 14, 1914, while engaged in his employment as switchman for the Chicago & Alton Railroad Company. He left him surviving, his mother, Mary C. Riley, and several brothers and sisters, and also appellant, Pearl Bevan Crosby, now Pearl Bevan Lincoln, as his alleged widow. The Chicago & Alton Railroad Company paid to the then administrator of his estate in settlement of the claim for damages on account of his death the sum of $2,500.

Appellant, before she married Crosby had been previously married to one John S. Bevan, by whom she had one child who has always lived with her. Since the death of Crosby she has married again.

In the course of the administration of Crosby's estate in the county court, Mary C. Riley, his mother, filed a petition for the distribution of the $2,500, which comprised all the assets of the estate, and averred

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

therein that the deceased left no widow and that his brothers and sisters had assigned their respective interests to her, and that she, as mother of the deceased, and assignee in the instrument referred to, was entitled to the entire fund. The county court found from the evidence that appellant was the widow of the deceased and as such entitled to the assets of the estate, and entered an order of distribution accordingly. On appeal to the circuit court, it was held that appellant was not the widow of the deceased and that Mary C. Riley, his mother, was entitled to the fund.

The Chicago & Alton Railroad Company in the circuit court made its motion for leave to file an intervening petition, averring that it had paid said sum of $2,500 to the administrator under the belief that appellant was the lawful widow of Crosby, and that if she was not the lawful widow there was no other person legally entitled to receive the money, as there was no other person to whom said Crosby contributed who was dependent upon him for support, and asked that said $2,500 be returned to it. This motion was denied.

Two reasons are assigned by appellant why the judgment of the circuit court should be reversed: (1) that the evidence establishes that appellant was the lawful widow of James J. Crosby deceased; (2) that the court erred in overruling the motion of the Chicago & Alton Railroad Company for leave to intervene.

Appellant testified that she obtained a decree of divorce from her first husband, James S. Bevan, November 17, 1910, in the circuit court of McLean county; that on December 17, 1910, she and James J. Crosby went to the City of St. Louis, Missouri, and were married there on that day; that prior to that day she and Crosby were living in Bloomington and were residents of the State of Illinois, and that

he was a switchman employed by the Chicago & Alton Railroad Company; that he resigned that position when they went to St. Louis; that before she married Crosby she had consulted a lawyer who advised her that if they lived outside of the State it would be a legal marriage; that she and her husband intended to stay in St. Louis, but he could not get work there, so after living in that city nearly 4 months she and her husband returned to this State where he resided until his death and she has resided ever since; that when she and Crosby applied for their marriage license in St. Louis, they gave their residence as W. Monroe St., Bloomington, Illinois.

The marriage license issued to them and also the certificate of marriage, executed by the minister who performed the ceremony, each mentions the place of residence of appellant and Crosby as the City of Bloomington, Illinois. The above was all the evidence introduced on the question of the marriage of appellant.

Section 1-A, ch. 40, Rev. St. (J. & A. ¶ 4216) provides in substance that in every case in which a divorce has been granted neither party shall marry again, except with each other, within one year from the time the decree was granted, and if either party does marry again within such time the marriage shall be held absolutely void. It is contended, on behalf of appellant, that where the celebration of the marriage is once shown, everything essential to its validity will be presumed until the contrary is shown, and that the marriage being lawful in Missouri must be recognized as lawful in this State. The general rule prevailing in this State is that the law of the State where the marriage takes place must control as to its validity, and if valid where celebrated it is valid in this State. *Reifschneider v. Reifschneider*, 241 Ill. 92; *Lyon v. Lyon*, 230 Ill. 366; *McDeed v. McDeed*, 67 Ill. 545. It is also the rule that a marriage, invalid.

where it is celebrated is invalid everywhere. *Reifschneider v. Reifschneider, supra; Canale v. People,* 177 Ill. 219. But the general rule that a marriage valid where it is celebrated is valid everywhere has two exceptions, viz., marriages which are contrary to the laws of nature, as generally recognized by Christian countries, and those which are declared by the positive law to have no validity. *Wilson v. Cook,* 256 Ill. 460. In this last case the court, after citing several cases sustaining the doctrine announced, said: "These cases sustain the principle that where a State has enacted a statute lawfully imposing upon its citizens an incapacity to contract marriage by reason of a positive policy of the State for the protection of the morals and the good order of society against serious social evils, marriages contracted in disregard of the prohibition of the statute, wherever celebrated, shall be void." In the case of *People v. Prouty,* 262 Ill. 218, in passing on the statute, it is held: "In addition to this punishment the marriage shall be held absolutely void; and this result follows, so far as the rights of the parties within this State are concerned, even though the marriage should be performed in some other jurisdiction."

The marriage having taken place between two citizens of this State contrary to the declared public policy of this State, no presumption arises that it was a lawful marriage under the laws of the State of Missouri. The statutes of the State of Missouri were not introduced in evidence and there is no common law governing divorce. In the absence of proof of the statute laws of another State they will be presumed to be the same as the *lex fori* where there is no common-law rule applicable or legal presumption to the contrary. *Nehring v. Nehring,* 164 Ill. App. 527.

If the presumption could be indulged that the marriage was lawful under the law of the State of Missouri, yet that would not make it lawful in this State

if the parties went to Missouri to be married solely for the purpose of evading the laws of this State. *Wilson v. Cook, supra.* The only evidence tending to show that appellant and Crosby intended in good faith to become citizens of that State is the bare statement of appellant in her testimony that such was the fact. While they staid in St. Louis over 3 months, still during that time Crosby had no employment and there is no evidence to show that he seriously sought to procure any nor of any other fact tending to prove an intention to actually establish a residence and become a citizen of the State of Missouri. If the validity of such a marriage depends upon the good faith of the parties to become actual residents of the State wherein they were married, then there must be more proof of that good faith than the mere statement that such was their intention, otherwise the statute could be readily ignored and avoided by parties within its inhibition going to another State to be married, residing there a few days or months, and then returning to this State and claiming immunity from its provisions on the ground that at the time of the marriage they intended to become citizens of the State where it was consummated but subsequently changed their minds and decided to again become residents of this State. The fact that appellant and Crosby stated to the officer from whom they procured their license to marry and to the minister who performed the ceremony that they were residents of the State of Illinois conclusively shows that at the time they were married they considered themselves residents of this State.

The contention of appellant that the judgment should be reversed because the court erred in denying the motion of the Chicago & Alton Railway Company for leave to file an intervening petition cannot be sustained. If the court committed error in this regard the only one who can complain of it is the Chicago &

Alton Railroad Company, which is not a party to this appeal.

The judgment of the circuit court is affirmed.

*Affirmed.*