CATHERINE PHELAN *et al.*

*v.*

JOHN P. HYLAND.

*Opinion filed June 19, 1902.*

1. APPEALS AND ERRORS—*when decree dismissing bill to cancel deed will be sustained.* A decree dismissing a bill to cancel a deed upon the ground of mental incapacity of the grantor will be upheld, on appeal, where the chancellor heard the evidence in open court, and where, although the evidence of the different parties is irreconcilable, the chancellor's finding is not manifestly against the weight of evidence.

2. DEED—*what a sufficient delivery of deed to pass title.* A deed from mother to son is sufficiently delivered to pass title to the grantee in the grantor's lifetime, where the notary who took the acknowledgment and was about to hand the deed to the grantor was directed by her to give it to the grantee, which he did.

APPEAL from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

MORTON B. SMITH, and H. VANDERPLOEG, for appellants.

A. B. MELVILLE, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a proceeding by appellants, the four daughters of Mary Hyland, deceased, against appellee, their only brother, in the superior court of Cook county, to set aside a deed made by the mother to appellee November 30, 1900, purporting to convey to him the grantor's homestead, of the value of about $5000, in the city of Chicago. The bill alleges that Mary Hyland, the grantor, was old and feeble in mind and body and could not understand or perform ordinary business transactions, and was mentally incapable of understanding or knowing the nature of a conveyance of real estate, and that the defendant, through misrepresentation, fraud, deceit and coercion, prevailed upon her to make the deed in question, and that she was at that time of unsound mind and feeble memory. The prayer is, that the deed may be canceled and set aside, that the defendant be declared to hold said property in trust for the benefit of all the heirs of the deceased, and that he be decreed to account, etc. The defendant answered denying the allegations of the bill, and the cause was heard upon oral testimony, in open court. The bill was dismissed at complainants' costs for want of equity.

The chief contention of appellants is, that the grantor, at the date of the deed, was incapable of understanding the nature of the act, and that the deed in question was procured through undue influence or constructive fraud on the part of the grantee. The question, therefore, for our decision is one of fact, as to whether or not the evidence shows such lack of mental capacity in the grantor and undue influence on the part of the son.

The complainants introduced evidence showing that the deceased at one time proposed to make a deed to this property to a son-in-law for the purpose of having him divide it equally between her children, but he says the deed was not made. Several persons testify that a change was noticeable in her mental condition during

the last two years of her life, and that she seemed to forget persons with whom she had been well acquainted for many years. Others testify that she talked incoherently at times, and all of the witnesses for the complainants in substance testify that she was not capable of transacting ordinary business at the date of the deed in question. But, on the contrary, several other persons, including the notary who took the acknowledgment to the instrument, and her physician who attended her just before and soon after November 30, 1900, testified to the effect that while, perhaps, her memory was more or less impaired by reason of her old age, she was competent to transact the business in hand and knew what she was doing. The physician testified that her memory was normal. One witness,—a grocer with whom she dealt,— testified that deceased had said in his presence that she was going to give the house and lot to her son; that the girls (her daughters) were well to do, and she thought it was her place to give the house and lot to the boy; and some time after the date of the deed he says she told him she had given the property to her son. Another witness says that deceased spoke to her four or five times about leaving her property to her son, saying that he needed it and the daughters did not; that he was unfortunate; that he was a printer, and certain machines had been introduced which had taken his place, and that he had been kind to her.

The testimony of the two witnesses last referred to would seem to indicate a well-defined plan in the mind of the deceased to give the property to her son, and the evidence tends to show not only her purpose, but a reason therefor, and also that she was satisfied with it after it had been done. To say the least, the testimony is in irreconcilable conflict, and not satisfactory to the judicial mind either way. The rule has been often announced by this court that where the chancellor sees the witnesses and hears them testify, we will not disturb his finding

and decree unless we can see, from the whole testimony, that it is manifestly against the weight of the evidence; and under this rule the decree of the court below must be affirmed.

Complainants contend that the deed was not sufficiently delivered to pass the title at the time, and urge that the grantor failed to lose all control over it. We think this contention is not sustained by the evidence. On the contrary, the notary who drew the instrument says after drawing the deed he took it away for the purpose of attaching his notarial seal, and upon his return addressed the grantor, saying, "Here is the deed," and was about to hand it to her, and she said, "Give it to the young man," which he did. It cannot be doubted that this was a sufficient delivery to pass title to the grantee in the grantor's lifetime.

The decree of the superior court will be affirmed.

*Decree affirmed.*