# BIRDIE ASCHER, Respondent, v. HENRY ASCHER, Appellant.

St. Louis Court of Appeals. Argued and Submitted November 20, 1919. Opinion Filed December 2, 1919.

1. **DIVORCE: Alimony: Alimony Pendente Lite Allowed Although Husband Showed Prima-facie Invalid Marriage.** Under section 2375, Revised Statutes 1909, which expressly provides that the court may decree alimony pending the suit in all cases which the same may be just, *held*, notwithstanding the fact that the matter offered by the defendant in defense might make out a prima-facie case against the wife, going to the validity of the marriage of the parties, yet the wife was entitled to be heard in court, to be allowed the assistance of counsel and a reasonable counsel fee as well as alimony *pendente lite* in such sum as the court might deem proper.

2. ——: ——: **Alimony and Suit Money Allowed Not Excessive.** In view of the husband's financial condition, where the wife was without means of her own, an allowance of $60 per month alimony *pendente lite* and $350 suit money, $250 of which was for counsel fees, *held* not excessive.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Victor H. Falkenhainer,* Judge.

AFFIRMED.

*John A. Hope* for appellant.

(1) An appeal lies to review the finding and decision of a trial court with respect to allowance of alimony *pendente lite* to the wife in her divorce suit. Sec. 2380, Vol. I, R. S. 1909; Adams v. Adams, 49 Mo. App. 592; State ex rel. v. Seddon, 93 Mo. 520; Marx v. Marx, 94 Mo. App. 172. (2) The right of the wife to alimony, whether temporary or permanent, depends upon the existence of the marriage relation between her and the alleged husband. If it is apparent in this case

that the alleged marriage between plaintiff and defendant was and is void, as defendant contends, then the action of the learned Judge of the circuit court in awarding her alimony *pendente lite,* is without foundation in law and should be reversed. Carroll v. Carroll, 68 Mo. App. 190, 193; Wagner v. Wagner, 6 Mo. App. 572, 573. (3) Plaintiff claims that she and defendant were lawfully married at Bellville, Illinois, on October 27, 1911. The alleged marriage is null and void for the reason that plaintiff was then and still is the wife of Sam Schucat, to whom she was married on Judy 13, 1905. The law of Missouri is: "All marriages, when either of the parties had a former wife or husband living, shall be void, unless the former marriage shall have been dissolved." Sec. 8281, Vol. II, R. S. Mo. 1909. (4) The alleged marriage to defendant Ascher being, for the reasons hereinbefore given, null and void *ab initio,* it is still void—incapable of ratification or of being made good by any subsequent agreement, cohabitation, actions or conduct of the parties. Pain v. Pain, 37 Mo. App. 110; Patterson v. Gaines, 47 U. S. Reports (6 How.) 550; Drummond v. Irish, 52 Iowa 41; Dare v. Dare, 52 N. J. Eq. 195; 19 Am. & Eng. Ency. Laws, sec. 5, p. 1176. (5) Nor could the alleged marriage in this case ripen into a common law marriage. Pain v. Pain, supra; Hall v. Industrial Commission 165 Wis. 364; Patterson v. Gaines supra; Bishop v. Britain Ins. Co., 229 Mo. 699. (6) The alleged marriage was and is null and void for the further reason that it was entered into and solemnized in Illinois on October 27, 1911, within less than a year after the Wisconsin interlocutory decree of divorce, even if such interlocutory decree could be said to have dissolved her marriage to Schucat. This is so bcause of the statute of Illinois in force at that time which provides that marriage of a divorced person within a year after divorce, granted for any of the causes specified in the Divorce Act of that State, approved March 10, 1874, is void and a felony. Laws of Illinois, 1905, page 194; Sections 1

and 2, Chap. 47, Courtright's Illinois Statutes.   (7) A
marriage void in the State where solemnized is void
everywhere.   Johnson v. Johnson, 30 Mo. 80;   Jordan
v. Telephone Co., supra;   I Bishop on Marriage and
Divorce, sec. 252 et seq.;   Patterson v. Gaines, supra;
Am. and Eng. Ency. Law, supra.

*Charles G. Revelle* and *Lew R. Thomason* for re-
spondent.

REYNOLDS, P. J.—On May 16, 1919, respondent,
Birdie Ascher, filed her petition for divorce from de-
fendant, in the circuit court of the city of St. Louis, in
which she alleged that she and defendant were lawfully
married in Belleville, Illinois, on October 27, 1911, and
lived together from and after that date until May 1, 1919,
when she then left him for stated indignities.   Defend-
ant, being duly summoned, was granted, on June 3,
1919, ten days additional time to plead.   On June 5,
1919, plaintiff filed a motion for alimony *pendente lite*
and for suit money.   A hearing was had on this and,
on June 10, 1919, the court entered an order sustaining
plaintiff's motion for alimony *pendente lite* and suit
money, and ordered defendant forthwith to pay plain-
tiff the sum of $350 for suit money, $100 of which to be
deposited to secure the costs of the action, and the
remaining $250 as counsel fees, and that defendant also
pay to plaintiff as and for her alimony *pendente lite*
the sum of $60 a month until the further order of the
court, the first payment to be made and to become due
and payable forthwith.   On June 13, 1919, and after the
entry of the above order, defendant on his motion was
allowed five days additional time to plead.   On June
14, 1919, defendant filed a motion to set aside the order
of June 10th, awarding plaintiff alimony and suit
money.   On June 23, 1919, defendant filed an answer and
cross bill, and on that date defendant's motion of June
10th, to set aside the order for alimony, etc., coming up
for hearing was considered and the motion for rehear-

ing overruled. Taking proper steps, defendant thereupon took his appeal to our court.

On the hearing of the motion for alimony *pendente lite* there was evidence on the part of plaintiff tending to show that she and the defendant were residents of St. Louis when going through the marriage ceremony in Illinois, and afterwards lived together in St. Louis as husband and wife for some seven years and up to the time of the separation; that plaintiff was the mother of a child by her former marriage, a girl ten years of age at the time of this trial, who had lived with her and her husband during the time she and defendant lived together; that she was without means of her own; that defendant was owner of a large apartment house and other valuable property situated in this State from which he derived rentals; that defendant had told plaintiff that he had paid off $25,000 in the last five years on property he owned in the city of St. Louis and on which there was a mortgage; that he had not contributed anything to her support since the separation and had notified persons with whom she did business not to give her credit and had refused to pay for articles of wearing apparel. On cross-examination plaintiff stated that her marriage to defendant was not her first marriage; that she had been married some years ago to another man. Counsel for defendant asked her if she had not been divorced from this man on May 6, 1911. This was objected to by counsel for plaintiff, and the court said: "Wait one minute. We are not going into that now." Counsel for defendant replied, "It may be we have an absolutely void marriage here. Maybe this marriage is void and I propose to follow this up and bring out this." The court asked how that would help, and counsel for defendant said that it was "an important thing, because lawful marriage is alleged in this petition." The court then said, "Go ahead, if that is the purpose. . . . He (counsel for defendant) states he is going to follow that up. If it is not followed up, why, then I am going to strike it

202 M. A.—40

out.'' In answer to a question from counsel for defendant, plaintiff said she was divorced from her former husband on May 6, 1911, and on October 27, 1911, had been married to the defendant at Belleville, Illinois, by a justice of the peace. Asked if the justice had not asked her whether she had been divorced, plaintiff said ''Yes,'' but denied any recollection of the justice having told her on that occasion that the Illinois law prohibited any one who had been divorced from marrying again within a year subsequent to the divorce; did not remember telling him when she had been divorced or that he asked her the date of the divorce. Whereupon, counsel for plaintiff objected to that line of questioning as not tending to show whether there was or was not a legal marriage there. The court said: ''No, I don't think so. Possibly we may get at something. I will have to let it stand, though, for what it is worth. . . . It doesn't prove anything at this time.'' The court followed this with the statement that he did not intend to pass on the question at the time; that he would take this testimony with some reservation. The plaintiff further testified that while she did not know exactly what papers she had signed at the instance of defendant, she had signed a number of documents which she understood to me mortgages or deeds. On re-direct examination plaintiff testified that defendant had procured the marriage license for them in Illinois and that the marriage was performed there by a magistrate; that they returned immediately to Missouri, she taking his name (Ascher), and from that date to this she had gone by the name of Mrs. Ascher; had lived and cohabited with him as his wife from that day until the day of the separation, and that he had held her out to other people as his wife. Counsel for defendant objected to this line of testimony on the ground that it was an effort to show a common-law marriage and that was not the position assumed by the petition. Counsel for plaintiff replied that it was not material so long as a marriage was alleged; that even if there was an

irregularity about the marriage that would have made it at the time absolutely void, the ceremony followed by cohabitation and by recognition on the part of the other party to the marriage, constituted in law a valid marriage, to which the court remarked, ''I think so.'' Plaintiff further testified that defendant had taken her before officers to make acknowledgments as his wife and represented her as his wife.

There was evidence given on this motion, partly by plaintiff and a witness, and partly by defendant, tending to show that defendant was the owner of a large amount of valuable income yielding property in St. Louis, receiving as rental therefrom a net income of four or five thousand dollars a year; that he retained out of this the sum of $150 a month for his own individual expenses, applying the balance to the reduction of the deeds of trusts on the property, and that he had other valuable property.

On cross-examination defendant stated that he had given his wife over $10,000 during the time they had lived together. He was asked if he was taking the position that plaintiff was not his wife. He answered, ''No,'' qualifying it afterwards, however by saying that he did not know whether she was or not; that since he had found out a couple of years before this hearing something about their marriage in Illinois that made him doubt whether that marriage was legal, he did not know how he stood about it; that up to that time he had never had any doubt as to her being his wife but had continued to live with her as her husband; had held her out to his friends and acquaintances as such and had done that even in the last two years. Counsel for defendant objecting to this line of questioning on the ground that the petition was not based on a common-law marriage, the court announced that he would not go into that question; was not going to take a position on that at the time. Whereupon counsel for plaintiff suggested that this would be heard on the divorce matter itself. It was at the conclusion of this hearing on

the motion for alimony that the court entered the order before stated.

Thereafter, on June 14, 1911, and during the same term of court, defendant filed a motion to set aside the order made June 10th, allowing the alimony *pendente lite* on five grounds. First, that alimony, whether permanent or *pendente lite,* can be allowed only where there is an existing valid marriage; that on plaintiff's own showing the alleged marriage between her and defendant held in Illinois, was null and void. Second, on the face of the record the order of June 10th, allowing plaintiff alimony, was invalid and without any foundation in law. Third, that the allowance of alimony *pendente lite* is contrary to the law. Fourth, that such allowance is contrary to the evidence introduced at the hearing of the motion. Fifth, the allowance was grossly excessive.

This latter motion coming on for hearing counsel for defendant offered a certified copy of the proceedings in the Wisconsin Circuit Court, authenticated according to the act of Congress. Counsel for plaintiff objected to its introduction or to any other like matter, on the ground that the motion is merely one in connection with which can be considered only evidence as heard by the court at the time the order was made, except the evidence be on the ground of newly discovered evidence, which was not alleged. The court sustained this objection, whereupon counsel for defendant offered in evidence a duly certified copy of a record of the Wisconsin court in the divorce case referred to. This was excluded on objection of counsel for plaintiff as not germane to the matter before the court but as relevant in the trial on the divorce. Counsel for defendant then offered in evidence certain sections of the Wisconsin law. These were objected to by counsel for plaintiff as before, defendant duly saving exceptions to these rulings. At the conclusion of the hearing the court overruled the motion for rehearing, whereupon, as before stated, defendant appealed.

We do not think there is anything in this appeal. It is true that in Carroll v. Carroll, 68 Mo. App. 190, our court said that the doctrine of the cases relied on by defendant's counsel in resisting allowance for maintenance and alimony applies only where the husband denies that the marriage relation exists. "In such cases," says our court (l. c. 193) "temporary alimony will be denied unless the wife produced satisfactory proof of the marriage. If the law were otherwise a man would have no protection against an adventuress." This, as we have seen, hardly fits the facts here. There was evidence that such relation existed here. In Cope v. Cope, 103 Mo. App. 260, 77 S. W. 92, a case where the wife in her testimony referred to the defendant by name as her husband, and the defendant did not testify, the Kansas City Court of Appeals said (l. c. 262): "Admitting that it was necessary to prove the marriage, we think the testimony of the wife, the allegations of the petition, and the silence of the husband when called upon for alimony, were sufficient to justify the court in rendering the decree." We have a somewhat similar condition here.

In State ex rel. Gercke v. Seddon, Judge, 93 Mo. 520, 6 S. W. 342, our Supreme Court held that an appeal would lie from an order allowing maintenance, it being a final and definite order disposing of the merits of that proceeding in the circuit court, and that the order allowing counsel free and suit money pending the appeal is largely in the discretion of the circuit judge and will not be interfered with by the appellate court unless it is made clearly apparent that such discretion had been abused. It further held that the power of the court to order and enforce an allowance for alimony *pendente lite* is not dependent upon the merits of the issue in the divorce suit, although the proceeding is an adjunct of the action for a divorce. Citing that case in Dowling v. Dowling, 181, Mo. App. 675, l. c. 679, 164 S. W. 643, in which the trial court had refused the wife a decree, but had allowed counsel fees to the unsuccessful wife

pen the appeal, we held that it presented a case that in our opinion fully warranted that action. Our statute (section 2375, Revised Statutes 1909), expressly provides that the court may decree alimony pending the suit in all cases where the same may be just. So we hold here. Notwithstanding the fact that the matter offered by the defendant in defense might make out a prima-facie case against the wife, going to the validity of the marriage of the parties, yet the wife was entitled to be heard in court, to be allowed the assistance of counsel and a reasonable counsel fee as well as alimony *pendente lite* in such sum as the court might deem proper. [See, also, Libbe v. Libbe, 166 Mo. App. 240, 148 S. W. 460; Scism v. Scism, 184 Mo. App. 543 167 S. W. 455, and cases cited at pages 547 and 548.] It is said that the allowance is excessive. Conceding the financial condition of the defendant, we do not think that it is.

The judgment is affirmed. *Allen* and *Becker, JJ.,* concur.