Florence E. Long, Plaintiff and counter-defendant, Appellee, v. Michael J. Long, Defendant and counter-plaintiff, Appellant.

**Gen. No. 10,949.**

Second District.

November 1, 1957.

Released for publication November 21, 1957.

Philip F. Locke, of Glen Ellyn, and Edgar J. Elliott, of Wheaton, for appellant.

Walter Bard Carroll, of Downers Grove, and Gordon Moffett, of Wheaton, for appellee.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

On December 24, 1953, Florence E. Long filed, in the office of the Circuit Court of Du Page county, a statement of her intention to file a complaint against her husband for divorce, and on March 1, 1954, her complaint was duly filed. In this complaint, after alleging her marriage to the defendant on November 1, 1952, and the birth of their son on March 21, 1953, she charged that the defendant wilfully deserted and abandoned her without any reasonable cause on November 1, 1952, and that his desertion had continued without interruption for the space of more than one

year. Her complaint alleged that the defendant was an able-bodied, healthy man and prayed for a divorce, the care, custody and education of the minor child and that she be awarded attorney fees, together with support and maintenance for herself and child.

A summons was duly issued and a copy of the complaint was duly served on the defendant in Boulder, Colorado. The defendant did not appear and on June 2, 1954, a default was entered against him and on June 22, 1954, a hearing was had, resulting in a decree of divorce. This decree reserved the question of support.

Thereafter a petition for support of the minor child and for attorney fees was filed by the plaintiff and on July 22, 1954, the defendant entered his appearance and moved to vacate and set aside the default and the original decree. This motion was heard and sustained and on September 10, 1954, the order of default was set aside, the decree vacated and the defendant granted leave to answer the complaint. The defendant answered and filed a counterclaim, which was afterward amended. By his answer, the defendant admitted that he was a resident of Du Page county, alleged that he participated in a pretended or sham marriage ceremony with the plaintiff on November 1, 1952, and stated that he and the plaintiff agreed that they would never live together as husband and wife and averred that after the marriage ceremony they immediately separated. His answer denied the other allegations of the complaint.

The amended counterclaim recited that the counterclaimant was a minor and appeared by his father and next friend. He alleged that a pretended or sham marriage between him and counter-defendant was solemnized in Du Page county, Illinois, on November 1, 1952, and averred that at the time of the said pretended marriage, the counterclaimant had not arrived at the age of eighteen years, having been born on April 16, 1935. He further averred that the parties had never

278

lived or cohabitated subsequent to the marriage and concluded that, therefore, the marriage had never been consummated. The prayer of the counterclaim was that the marriage be declared null and void.

The reply of Florence E. Long to this amended counterclaim admitted the marriage and averred that she had no opinion as to the date of her husband's birth, but called for strict proof and alleged that it appeared from the application for their marriage license, which was filed in the office of the County Clerk of Du Page county on October 31, 1952, that Michael J. Long, her husband, was born on April 16, 1934, at Chicago, Illinois, and that this fact appeared from the affidavit of Veronica Long, the mother of Michael J. Long. By her reply, she admitted that she and her husband never cohabited subsequent to the marriage, but denied that the counterclaimant was entitled to any relief and asked that the counterclaim be dismissed.

Upon a hearing, the chancellor entered a decree, which, after making the jurisdictional findings, found that the equities were with the plaintiff and that she had established all the material allegations of her complaint and that the defendant had deserted the plaintiff without any reasonable cause, as alleged. The decree also found that as a result of the marriage, Frank Long was born on March 21, 1953; that the plaintiff was a fit and proper person to have the care, custody, control and education of said child and that she was entitled to reasonable allowance for his care and maintenance and that the defendant was sufficiently able to pay the same. The decree dismissed the counterclaim for want of equity, dissolved the marriage, as prayed in the original complaint, awarded the sole care, custody and control of the minor to the plaintiff and directed the defendant to pay the plaintiff $20 per week for the support and maintenance of said minor child, together with $100 attorney fees within ninety days from the entry of the decree. To reverse this

decree, in so far as it dismissed the counterclaim of defendant for annulment, Michael J. Long, the counter-claimant, appeals.

It is insisted by counsel for appellant that the evidence in this record discloses that at the time of appellant's marriage, he was seventeen years of age and therefore could not enter into a binding marriage contract: that he never lived with appellee either before or after he attained eighteen years of age and therefore the chancellor erred in dismissing his counterclaim.

Counsel for appellee insist that whether appellant was or was not eighteen years of age at the time of the marriage was a question of fact which the trial court resolved against appellant's contention; that both parties recognized the validity of this marriage at the time and long after the ceremony was performed and appellant, by his conduct is estopped from questioning its validity.

Under the provisions of our statute male persons of the age of twenty-one years and upwards and female persons of the age of eighteen years and upwards may contract and be joined in marriage: that a male person of eighteen years of age and upwards may also contract a legal marriage if the parent of such person shall appear before the county clerk in the county where such minor person resides and shall make affidavit that he or she is the parent of such minor and give consent to the marriage. Such parent shall, when giving consent to such marriage, make an affidavit as to the date and place of birth, and place of residence of such minor and shall submit such proof of such minor's age as the county clerk may deem necessary to comply with the purposes of this act, provided, further that this act shall not repeal any act or portion of an act entitled "An Act Concerning Bastardy." (Ill. Rev. Stat. 1951, chap. 89, sec. 3.)

The record in this case shows that on November 1, 1952, the parties hereto applied to the county clerk of Du Page county for a marriage license. In this application, to which appellant subscribed his name, he swore, before the county clerk of Du Page county, that he was born on April 15, 1934, and was eighteen years of age at the time he made his application. Upon the hearing in the trial court a certified copy of appellant's birth certificate was offered and admitted in evidence, and this birth certificate indicated that appellant was born on April 15, 1935. On the reverse side of the application of the parties for this marriage license is the affidavit of Veronica Long to which she subscribed her name and to which she was sworn by the county clerk. This affidavit recited that affiant was the mother of appellant; that she gave her consent to his marriage with appellee; and that appellant was born on April 15, 1934.

Upon this application a marriage license was duly issued, and the parties to this proceeding were married at the home of appellee in the early evening of November 1, 1952. The wedding was attended by the respective mothers of the parties. Following the ceremony, appellant left with his mother and, after taking his mother to her home, returned to the home of appellee, and in response to her counsel's question, "Did you go out with him that night?" appellee replied, "That's right." She further testified that later that evening appellant brought her back to the home of her parents and after the night of November 1, 1952, she had not seen her husband and had never lived with him.

In Matthes v. Matthes, 198 Ill. App. 515, an amended complaint was filed on November 6, 1913, by Herbert Matthes to annul his marriage alleged to have been contracted when he was under eighteen years of age. His complaint further alleged that he did not enter into said marriage voluntarily but was compelled to do so

by force and duress. The answer of the defendant neither admitted nor denied plaintiff's age as alleged but stated that on information and belief plaintiff·was older than eighteen years at the time the marriage ceremony was performed on March 20, 1913; that immediately thereafter the parties began living together as husband and wife and continued to do so until about May 23, 1913, and that thereafter a child was born. Upon a hearing the trial court dismissed the complaint for want of equity.

In affirming the decree of the Superior Court, the Appellate Court said (p. 523): ". . . When our Legislature designated who may contract marriage, it was their intention to raise the age of discretion or consent from fourteen and twelve years, as established by the common law, to that of eighteen and sixteen years respectively; therefore, if a marriage is performed between people under such age, it may be annulled by either party before arriving at the age of consent. Necessarily, if after arriving at the age of consent, the parties should continue the marriage relation, then they must be considered to have ratified same and the marriage thereby becomes valid and binding." Further on the court quoted from Phelan v. Hyland, 197 Ill. 395, 397, and Calvert v. Carpenter, 96 Ill. 63, 67, and said (p. 525): "The chancellor found for the defendant. He saw and heard the witnesses testify and was in a more advantageous position than we now are to determine where the preponderance lay. He had the right to take into consideration the appearance and the demeanor of the witnesses while on the stand. We should not be warranted in disturbing his finding unless it is clearly and manifestly against the weight of the evidence."

In the instant case, neither appellant nor his mother testified upon the hearing. If the recitals in the birth certificate were true, the mother of appellant, at the time the license was applied for, executed a false affi-

davit. Appellant also executed a false affidavit. Following the ceremony the parties did not live together, but it was not until September 25, 1954, more than seventeen months after his birth certificate states that he reached the age of consent, that appellant sought a judicial determination that his marriage was void or voidable.

██ Our statute does not specify the effect of a marriage in violation of its provisions. At common law the age of consent in the case of males was fourteen years and in the case of females, twelve years. An attempt of an infant under seven years of age to contract in marriage was nugatory and without legal significance, but the marriage of an infant over seven years of age but below the legal consent was not absolutely void but was a voidable marriage. One who marries before reaching the age of consent may avoid the marriage on reaching the age of consent, but such marriages are binding and valid until disaffirmed or until annulled by a judicial decree; and, when a party to such a voidable marriage reaches the age of consent, he may elect to ratify or repudiate the contract, and, having elected to affirm, he may not thereafter disaffirm. (55 C.J.S. Title Marriage, sec. 11, pp. 821, 822, 823.)

██ ██ The age of the counterclaimant was put in issue by the pleadings and the only evidence produced upon that issue at the hearing was a certified copy of appellant's birth certificate and the application for the marriage license, verified by appellant and his mother. These were at variance. The birth certificate was prima facie evidence of the facts therein stated. (Ill. Rev. Stat. 1955, chap. 111½, sec. 20, par. 55.) The record does not disclose the grounds upon which the chancellor dismissed the counterclaim. Perhaps he took notice that there was a prenuptial consummation of this union prior to the marriage ceremony and concluded that the counterclaim lacked equity. At any

283

rate, the chancellor resolved this question of fact in favor of appellee and against appellant, and this court, under the authorities, would not be justified in reversing that finding unless it is manifestly against the weight of the evidence.

It will be noted that the concluding sentence of our statute (Ill. Rev. Stat., chap. 89, sec. 3) authorizing male persons of eighteen years of age to contract a legal marriage provides that nothing in that act shall repeal any portion of the Bastardy Act, and section fifteen of that act provides that if the mother of any bastard child and the reputed father shall at any time after the birth of such child intermarry, the child shall in all respects be deemed and held legitimate. (Ill. Rev. Stat. 1955, chap. 17, sec. 15.) The parties hereto obtained a license and were married four and two-thirds months before their child was born. If appellant was seventeen years of age at the time he was married and that fact had been disclosed to the county clerk at the time he applied for his marriage license, together with the other fact that appellee was pregnant, the county clerk would have been justified in issuing a license, as the Bastardy Act recognizes the right of a pregnant girl and a boy, the reputed father, under the age of eighteen to intermarry in order to legitimize the child.

There is nothing in the act concerning bastardy with reference to the age of the parties, and the only purpose which the legislature could have had in mind in adding the concluding proviso to said section 3 of chapter 89 of our statute was to except from the application for a marriage license the age limitations set forth in that section if the female was pregnant. The Attorney General has so held. (Report and Opinions of the Attorney General, 1944, p. 160.) While the opinion of the Attorney General may not be binding on this court, it is persuasive. (Rogers Park Post No. 108 v. Brenza, 8 Ill.2d 286, 292.)

■ It has been held that where a minor contracts a voidable marriage he assumes the same obligations which the law imposes on an adult so far as the issue of the marriage is concerned; and, if a marriage is voidable because of non-age of the husband, he may be relieved of his obligations as a husband, but his obligations as a father, however, would be enforceable. (Willits v. Willits, 76 Neb. 228, 5 L.R.A. (N.S.) 767, 107 N.W. 379; Hunt v. Hunt, 25 Okla. 490, 100 Pac. 541, 22 L.R.A. (N.S.) 1202.)

■ The purpose of an annulment proceeding is to have a marriage which is void or voidable judicially declared void. In such a proceeding the marriage is not recognized, the theory being that no valid marriage ever came into existence (55 C.J.S. Title Marriage, sec. 48, p. 922).

In the instant case, the findings of the chancellor upon the issues made by the counterclaim and the reply thereto are supported by the evidence found in this record. The marriage of the parties hereto under the facts and the applicable law was a valid marriage and not voidable at the instance of appellant, and the chancellor did not err in so decreeing.

The decree awarding appellee a divorce and dismissing the counterclaim is affirmed.

Decree affirmed.

CROW, J., concurs.