**Barbara Lynn TAYLOR, a minor, by her mother and next friend, Pearl J. Lee, Plaintiff-Respondent,**

**v.**

**Gerald Douglas TAYLOR, a minor, by his father and guardian ad litem, Ben Taylor, Defendant-Appellant.**

**No. 8012.**

Springfield Court of Appeals.

Missouri.

March 23, 1962.

Emerson Foulke, Joplin, for defendant-appellant.

Myers & Birk, Webb City, for plaintiff-respondent.

STONE, Judge.

This is an appeal by defendant, Gerald Douglas Taylor, from the judgment of the circuit court awarding plaintiff, Barbara Lynn Taylor, $150 as attorneys' fees in her suit for divorce. At the outset of his brief, defendant tells us that "the issue tried below and the issue here is whether or not the purported marriage of the plaintiff and the defendant was void," and that his theory of the case is that, "if void, since the court only had jurisdiction to allow attorney fees in divorce cases where there is a valid marriage, the judgment for attorney fees was invalid because of lack of jurisdiction." We approach the facts with this statement of "the issue" and of defendant's theory before us.

In the first numbered paragraph of her "Petition for Divorce" filed on February 23, 1961, plaintiff alleged "that on the 22nd day of August, 1960, at Miami, Oklahoma, she was lawfully married to defendant and continued to live with defendant as his wife until on or about the 19th day of February, 1961, at which date they separated and have since *live* separate and apart." Charging that various indignities, as detailed in her petition, had rendered her condition in life intolerable [V.A.M.S. § 452.010], plaintiff prayed for a decree of divorce, restoration of her maiden name, and reasonable allowances for alimony and attorneys' fees. In the first numbered paragraph of his "Answer" filed on March 9, 1961, "the defendant admits Paragraph 1 of the petition." The prayer of the answer was "that plaintiff's petition be dismissed and that the costs of this action be assessed against her." On March 13, 1961, plaintiff filed her "Motion for Suit Money, Attorney Fees and Alimony Pendente Lite" which was in conventional form; and, when that motion came on for hearing on March 16, 1961, both parties were present and testified.

After preliminary questions had developed that plaintiff lived in Webb City, Missouri, and was seventeen years of age, her counsel inquired "when were you married?" and plaintiff answered "August 22, 1960." During plaintiff's direct examination, counsel referred several times to "your marriage" and to "your husband"; and, in connection with her testimony con-

cerning a used Ford automobile being driven by defendant, plaintiff was interrogated as to whether this automobile was purchased "while you were married," to which she responded in the affirmative. Not a single objection or motion to strike was interposed in the course of plaintiff's direct examination. On cross-examination, the second question by defendant's counsel was "were you pregnant when you got married?" which prompted the emphatic reply "no, sir, I was not."

When defendant took the stand for the obvious purpose of demonstrating his impecunious circumstances, one of the preliminary "questions" put by his counsel was the casual, matter-of-fact statement "you were married last August?" with which defendant readily agreed "yes, sir." After it was shown that defendant was eighteen years of age at the time of trial and that he had been home on leave from Fort Knox at the time of his marriage, counsel asked "after you got married did you and your wife live together any?" which elicited the information that defendant had been discharged from military service on December 3, 1960, and thereafter had lived with plaintiff about five weeks.

Thus when the trial court awarded plaintiff $150 as attorneys' fees at the conclusion of the hearing upon her motion (and at the same time denied alimony), the marriage stood unqualifiedly admitted by defendant's answer, openly confirmed by the testimony of both parties, and blandly taken for granted by the parties and counsel alike.

Four days later, towit, on March 20, 1961, the alleged invalidity of the marriage was suggested for the first time in defendant's "Motion for New Trial or in the Alternative to Set Aside Judgment for Attorney Fees" and in an "Amended Answer" which recited that it was filed "with leave of court first had and obtained" although nothing in the transcript aliunde the quoted recital confirms it. V.A.M.R. Rule 55.53; V.A.M.S. § 509.490. Regardless of that, both pleadings tracked the same line. Both averred that "said marriage was performed in the State of Oklahoma on the 22nd day of August, 1960 and the validity of said marriage was at all times governed by the statutes of the State of Oklahoma then in force and effect"; both pleaded in haec verba 43 Okl.Stat.Ann. § 3 (as amended Laws of 1959, p. 183), the pertinent portions of which are set forth marginally;[1] and both contained allegations to the effect that on August 22, 1960, defendant was seventeen years of age, that under the cited statute "his marriage was expressly forbidden, prohibited and void," that no court had authorized the marriage in settlement of any suit for seduction or bastardy or because plaintiff was pregnant, and that the license for said marriage had been issued without the consent and authority of a parent or guardian (of defendant), "for which reason said license was illegally and invalidly issued and said marriage is absolutely void and of no effect." In his motion for new trial, defendant moved "the court to set aside the judgment for

1. "Any unmarried male of the age of twenty-one (21) years or upwards, or any unmarried female of the age of eighteen (18) years or upwards and not otherwise disqualified is capable of contracting and consenting to marriage; but no female under the age of eighteen (18) years and no male under the age of twenty-one (21) years shall enter into the marriage relation, nor shall any license issue therefor, except upon the consent and authority expressly given by the parent or guardian of such underage applicant in the presence of the authority issuing such license; * * * Provided, however, every male under the age of eighteen

(18) years, and every female under the age of fifteen (15) years are expressly forbidden and prohibited from entering into the marriage relation. Provided, that this section shall not be construed to prevent the courts from authorizing the marriage of persons under the ages herein mentioned, in settlement of suits for seduction or bastardy; and the courts may also authorize the marriage of persons under the ages herein mentioned, when the unmarried female is pregnant, or has given birth to an illegitimate child, whether or not any suits for seduction or bastardy have been brought; * * *."

attorney fees * * * and to grant him a new trial, or, in the alternative, to modify said judgment by overruling said motion for attorney fees." The prayer of the amended answer was the same as that of the original answer. Neither sought any affirmative relief as to the marriage.

When called by his counsel as a witness in support of his motion for new trial, defendant testified on direct examination that he was born on September 22, 1942, that he was still seventeen years of age at the time of the marriage ceremony on August 22, 1960, and that his mother was not present on that occasion. Over plaintiff's objection, the court admitted in evidence a "Notification of Birth Registration" from the Department of Commerce, Bureau of the Census, showing that *Gerauld* Douglas Taylor *was born in Webb City, Missouri,* on September 22, 1942. In the course of defendant's cross-examination, plaintiff offered and the court admitted in evidence a certified copy of the "Marriage Record" (pertaining to the marriage under discussion) in the office of the Clerk of the County Court of Ottawa County, Oklahoma. This "Marriage Record," all portions of which were dated August 22, 1960, was comprised of: (1) the "Application for Marriage License" in which plaintiff and defendant, over their admittedly genuine signatures subscribed and sworn to before the clerk, certified that Gerald Taylor (defendant) was "Age 21" and Barbara Benson (plaintiff) was "Age 18"; (2) an appended "Consent Affidavit" bearing the signature "Mrs. Ben Taylor," in which it was stated "that I am the mother of Gerald Taylor named in the above application as being of the age of 21 years, and in the presence of the issuing official, I do hereby consent to his marriage to Barbara Benson"; (3) another appended "Consent Affidavit" bearing the signature "Pearl J. Lee" and, in like language, identifying her as the mother of Barbara Benson "of the age of 18 years" and consenting to Barbara's marriage to Gerald; (4) a copy of the "Marriage License" issued to Gerald Taylor, "age 21

years," and Barbara Benson, "age 18 years"; and (5) the "Certificate of Marriage" by J. J. Swetnam, Justice of the Peace, that he had married Gerald and Barbara "in the presence of Mrs. Ben Taylor of Webb City, Missouri, and Pearl J. Lee of Webb City, Missouri."

Confronted with this "Marriage Record," defendant immediately assumed a posture of personal innocence and undertook to shift onto others the responsibility for the sworn representations as to age now branded by him as false and fraudulent. Defendant's version was that he first gave his correct age to the deputy clerk to whom application for a marriage license was made but that "he said I couldn't get one if I was that age, and if my mother said I was 21 I could get one." Whereupon (so testified defendant), a member of the wedding party, Mrs. Florine White, otherwise unidentified and not a witness at the hearing, told the deputy clerk that she was the mother of (defendant) Gerald and, posing as such, signed the "Consent Affidavit" certifying that he was twenty-one years of age and consenting to his marriage. We note parenthetically that, since Gerald needed no parental consent if he was twenty-one years of age [43 Okl.Stat.Ann. § 3], the primary purpose in taking the "Consent Affidavit" must have been to obtain and record parental confirmation of his age. Mrs. Ben Taylor, defendant's mother, followed her son to the witness stand. She admitted prior knowledge that he "wanted" to marry Barbara and that they "were going down to Miami and get married"; but, insisting that "we didn't approve," Mrs. Taylor said that she did not go to Miami and did not sign the "Consent Affidavit" which bore her purported signature.

 Passing preliminary questions which suggest themselves on the record before us, we proceed directly to the sole issue upon which defendant rests his appellate complaint, i. e., that the marriage of August 22, 1960, at Miami, Oklahoma, was void. We agree with defendant that the validity of this marriage must be deter-

mined substantively (although not procedurally) by the lex loci contractus, i. e., by the law of the State of Oklahoma.[2] But, we cannot agree that "any marriage prohibited by law in Oklahoma is void" or that, under Oklahoma law, the marriage under scrutiny was void even if defendant was, at the time of such marriage, one month short of eighteen years of age. On the contrary, it has been the settled law of Oklahoma since 1909, only two years after her admission as a sovereign state of the union, that a marriage of persons prohibited from marrying under 43 Okl.Stat.Ann. § 3 may be voidable but is not void. This was established beyond reasonable room for argument in the leading case of Hunt v. Hunt, 23 Okl. 490, 100 P. 541, 22 L.R.A., N.S., 1202, where the court firmly rejected the contention that the marriage of a sixteen-year old boy and a fourteen-year old girl was void under the then governing Oklahoma statute (differing from 43 Okl. Stat.Ann. § 3 in no particular here material or important) and clearly formulated the applicable rule [100 P. loc. cit. 543] "that, notwithstanding the statute may penalize those who solemnize or those who enter into marriage contrary to statutory authority, the marriage itself is not void unless the statute itself so makes it, and hence in the case at bar, although the marriage was expressly forbidden and prohibited, it was voidable, and not void." Subsequent Oklahoma cases have, without dissent or criticism, followed the Hunt case, supra.[3] We are convinced beyond doubt that the marriage under consideration was not void, but that it must be treated as valid for all civil purposes unless and until annulled by judicial decree.[4]

That our last statement may not be misconstrued as a veiled suggestion or implied invitation to seek annulment, it may not be inappropriate to interpolate that, on the transcript presented, we entertain grave doubt as to whether defendant now might obtain a decree of annulment, even if he should undertake to do so. Annulment is fundamentally a creature of equity [Nelson, Divorce and Annulment (2nd Ed.), Vol. 3, § 31.02, p. 277]; a suit seeking annulment is a proceeding in equity;[5] and, as in all

2. Hartman v. Valier & Spies Milling Co., 356 Mo. 424, 432, 433, 202 S.W.2d 1, 5, 6(1); Henderson v. Ressor, 265 Mo. 718, 730, 178 S.W. 175, 178(5), appeal dismissed 248 U.S. 536, 39 S.Ct. 21, 63 L. Ed. 408; Green v. McDowell, 210 Mo. App. 517, 527, 242 S.W. 168, 171(1); Derrell v. United States, D.C.Mo., 82 F. Supp. 18, 20–21(1); Restatement, Conflict of Laws, § 121, comment e, p. 186; annotation 71 A.L.R.2d 687, 692–693.

3. Hughes v. Kano, 68 Okl. 203, 173 P. 447; White v. McGee, 149 Okl. 65, 299 P. 222, 224; Stone v. Stone, 193 Okl. 458, 145 P.2d 212, 214(2). See also Plummer v. Davis, 169 Okl. 374, 36 P.2d 938, 942, and Portwood v. Portwood, Tex. Civ.App., 109 S.W.2d 515, 519, 522(8, 9), involving an Oklahoma marriage of minors. The cited Oklahoma cases are in accord with the general rule. Consult 35 Am.Jur., Marriage, § 103, p. 245; Nelson, Divorce and Annulment (2nd Ed.), Vol. 3, § 31.07, p. 281; Boehm v. Rohlfs, 224 Iowa 226, 276 N.W. 105, 108(4); Willits v. Willits, 76 Neb. 228, 107 N.W. 379, 380(2), 5 L.R.A.,N.S., 767; State ex rel. Scott v. Lowell, 78 Minn. 166, 80 N.W. 877, 46 L.R.A. 440.

4. Jordan v. Missouri & Kansas Tel. Co., 136 Mo.App. 192, 198–199, 116 S.W. 432, 433–434(2, 3); Portwood v. Portwood, supra, 109 S.W.2d loc. cit. 522(10, 11); Christensen v. Christensen, 144 Neb. 763, 14 N.W.2d 613, 615(3); Cruickshank v. Cruickshank, 193 Misc. 366, 82 N.Y.S.2d 522, 525(3); Dunphy v. Dunphy, 161 Cal. 87, 118 P. 445, 446(1); State ex rel. Scott v. Lowell, supra, 80 N.W. loc. cit. 878(2); State v. McPherson, 72 Wash. 371, 130 P. 481, 483; 35 Am.Jur., Marriage, § 57, loc. cit. 220; 55 C.J.S. Marriage § 11, loc. cit. 823; Speca, The Development of Jurisdiction in Annulment of Marriage Cases, 22 U.Kan.City L.Rev. 109, 111 (1954).

5. Meredith v. Meredith, 79 Mo.App. 636, 640(1); Marre v. Marre, 184 Mo.App. 198, 168 S.W. 636, 640(9); Henderson v. Ressor, supra, 265 Mo. loc. cit. 729, 178 S.W. loc. cit. 177(4); Worley v. Worley, Mo.App., 176 S.W.2d 74, 77(2); Anderson, Annulment of Marriages in Missouri, 21 Mo.L.Rev. 119 (1956); Speca, supra note 4, loc. cit. 139.

equitable actions in which application for relief is addressed to a court of conscience, the clean hands maxim, i. e., "he who comes into equity must come with clean hands," is applicable in a proceeding brought for the purpose of annulling a *voidable* marriage.[6] Furthermore, when a party to a voidable marriage contracted within nonage reaches the age of consent (i. e., marriageable age as distinguished from the age of competency to contract), such party may elect to ratify or repudiate the contract. Annotation 159 A.L.R. 104. As a general rule, an election to affirm will be inferred from continued cohabitation [55 C.J.S. Marriage § 11, loc. cit. 823; 35 Am.Jur., Marriage, § 106, p. 247]; and, having elected to affirm, a party thereafter may not disaffirm. Long v. Long, 15 Ill.App.2d 276, 145 N.E.2d 509, 513(2). Persuasive authority[7] supports the statement, particularly pertinent in the case at bar, that "(t)he operation of the general rule that the marriage of a person of nonage may be ratified by the spouses living together as husband and wife subsequent to arrival at marriageable age is not affected by the fact that the consent of the parents of such a person was not obtained, under a statute allowing marriages between persons otherwise incapacitated to marry because of nonage in the event such consent is obtained." Annotation 159 A.L.R. 104, 105. With annulment of marriage not a favorite of the law, it is settled judicial policy to grant a decree of nullity "only under circumstances and for causes clearly warranting such relief." 3 Nelson, op. cit. supra, § 31.05, p. 279. See also Worthington v. Worthington, 234 Ark. 216, 352 S.W.2d 80, 82–83, and 55 C.J.S. Marriage § 58c, p. 938.

 Returning from this short excursion into the field of annulment to the speci-

fic point of controversy, towit, the judgment awarding plaintiff $150 as attorneys' fees, we observe that, where the marriage is not admitted by defendant husband, a motion for temporary alimony or attorneys' fees must be supported by a prima facie showing of the marriage [Hill v. Hill, 241 Mo.App. 243, 253, 236 S.W.2d 394, 400], but that ordinarily the wife's motion for temporary allowances, if otherwise meritorious, will be sustained upon such prima facie showing, even though the husband tenders an issue of the validity of the marriage. Franklin v. Franklin, 365 Mo. 442, 445, 283 S.W.2d 483, 485(3). Otherwise stated, "(n)otwithstanding the fact that the matter offered by the defendant in defense might make out a prima facie case against the wife, going to the validity of the marriage of the parties, yet the wife (is) entitled to be heard in court, to be allowed the assistance of counsel and a reasonable counsel fee as well as alimony pendente lite in such sum as the court might deem proper." Ascher v. Ascher, 202 Mo.App. 622, 630, 216 S.W. 576, 578(1); Bradley v. Bradley, Mo.App., 295 S.W.2d 592, 596. Certainly instant plaintiff, asserting the validity of her marriage, has made a prima facie showing thereof, and defendant has done no more than tender an issue as to validity. Contrast Preston v. Preston, Mo.App., 342 S.W.2d 956, where plaintiff not only failed to make a prima facie showing of marriage but also, by her sworn pleadings and proof, demonstrated that there had been no marriage. In the detailed circumstances of the situation under review, the trial court did not err in allowing attorneys' fees to plaintiff. In addition to the Franklin, Ascher and Bradley cases, supra, see also Kruse v. Kruse, 231 Mo.App. 1171, 85 S.W. 2d 214; Hunt v. Hunt, supra, 100 P. loc. cit. 543–544(3); Whitebird v. Luckey, 180

---

6. Meredith v. Meredith, supra; Marre v. Marre, supra, 184 Mo.App. loc. cit. 211–212, 168 S.W. loc. cit. 640(9); Christensen v. Christensen, supra, 14 N.W.2d loc. cit. 616(9–12); Blunt v. Blunt, 198 Okl. 138, 176 P.2d 471; 3 Nelson, op. cit. supra note 3, § 31.46, loc. cit. 332; 3 id., § 31.18, pp. 295–297.

7. Matthes v. Matthes, 198 Ill.App. 515, 523(9); Long v. Long, 15 Ill.App.2d 276, 145 N.E.2d 509, 512; Holtz v. Dick, 42 Ohio St. 23, 28–29; Keith v. Pack, 182 Tenn. 420, 187 S.W.2d 618, 159 A.L.R. 101.

Okl. 1, 67 P.2d 775(2), 110 A.L.R. 1279; Stone v. Stone, 193 Okl. 458, 145 P.2d 212, 214(6), 215(8); Portwood v. Portwood, Tex.Civ.App., 109 S.W.2d 515, 524–525(26, 27); Willits v. Willits, 76 Neb. 228, 107 N.W. 379, 381, 5 L.R.A., N.S., 767; State ex rel. Wooten v. District Court of Silver Bow County, 57 Mont. 517, 189 P. 233, 238, 9 A.L.R. 1212; annotation 110 A.L.R. 1283; annotation 4 A.L.R. 926.

The judgment should be and is affirmed.

RUARK, P. J., and McDOWELL, J., concurs.