63 F.Supp.2d 1020 (1999)
Sharon EVERETTS, Plaintiff,
v.
Kenneth S. APFEL, Commissioner of Social Security, Defendant.
No. 4:98CV1417 CAS.
United States District Court, E.D. Missouri, Eastern Division.
July 12, 1999.
David D. Camp, Gateway Legal Services, St. Louis, MO, for Sharon Everetts, plaintiff.
Wesley D. Wedemeyer, Office of U.S. Attorney, St. Louis, MO, for Kenneth S. Apfel, defendant.

ORDER
SHAW, District Judge.
This matter is before the Court pursuant to the Report and Recommendation of United States Magistrate Judge Thomas C. Mummert, III, filed May 18, 1999. See 28 U.S.C. § 636(b). The Magistrate Judge recommends that the Court grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. Plaintiff has filed objections to the recommendation, asserting that the Magistrate Judge's reasoning is contrary to the Social Security Act, 42 U.S.C. § 416(h)(1)(A)(i), because it examines the validity of the annulment of plaintiff's purported *1021 1953 marriage, rather than determining what a Missouri court would find regarding the status of the plaintiff's 1983 marriage to the wage earner. Plaintiff argues that because the 1953 marriage was declared void ab initio in 1996, the 1983 marriage was valid.
After de novo review of the matter, the Court finds plaintiffs objections to be without merit, and concurs fully with the recommendation of the Magistrate Judge for the reasons stated in the Report and Recommendation.
Accordingly,
IT IS HEREBY ORDERED that the Report and Recommendation of the United States Magistrate Judge is sustained, adopted and incorporated herein. [Doc. 13]
IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [Doc. 10] is GRANTED and Plaintiff's Motion for Summary Judgment [Doc. 9] is DENIED.
An appropriate judgment will accompany this order.

JUDGMENT
In accordance with the order of this date and incorporated herein, and the Report and Recommendation of United States Magistrate Judge dated May 18, 1999,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendant shall have summary judgment against plaintiff and plaintiff's claims for relief are DISMISSED with prejudice.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
MUMMERT, United States Magistrate Judge.
This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Kenneth S. Apfel, the Commissioner of Social Security ("Commissioner"), denying Josephine Reid's[1] ("Plaintiff") application for widow's insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433. Both parties have moved for summary judgment [Docs. 9, 10], and the cause was referred to the undersigned United States Magistrate Judge for a review and recommended disposition pursuant to 28 U.S.C. § 636(b).

Procedural History
On April 10, 1996, Plaintiff filed her application for widow's insurance benefits on the record of Mitchell Reid. (R. at 64.)[2] Plaintiff's applications were denied initially and on reconsideration. (R. at 64, 66.) Plaintiff requested a hearing, which was held on September 30, 1997, before Administrative Law Judge ("ALJ") Francis P. Dorsey. (R. at 36.) The ALJ determined that Plaintiff was not the widow of the wage earner, and denied the application. (R. at 19.) The Appeals Council of the Social Security Administration ("SSA") denied review, effectively adopting the decision of the ALJ. (R. at 2-3.) Thus, the decision of the ALJ stands as the final determination of the Commissioner.

Testimony Before the ALJ
Plaintiff was represented by counsel at the hearing and was the only witness.
Plaintiff was born on June 23, 1938.[3] (R. at 40.) She testified that she was *1022 raped by Joseph Everetts[4] when she was twelve years old. (R. at 40-41.) When her parents found out she was pregnant, they made her marry him.[5] (R. at 41.) After the day of the marriage, she never again saw Mr. Everetts. (Id.) Her mother told her to use the last name of "Everetts" to avoid embarrassment. (R. at 43.) Plaintiff testified that her mother signed some papers so that she could marry Everetts. (Id.) She never thought of herself as married to Everetts, and never held herself out to be married to him. (R. at 43, 45.) She further testified that there was no need for an annulment because she and Everetts were never officially married. (R. at 45.) Regardless, she obtained a legal annulment of her marriage to Mr. Everetts in 1996. (Id.)
Plaintiff married Mitchell Reid in 1983, when she was 44 or 45 years of age. (R. at 44.) She thought of herself as his wife. (Id.) Mr. Reid died in 1990. (Id.)
Plaintiff was identified on Mr. Reid's application for disability benefits as his landlady, Ms. Everetts. (R. at 45.) She explained that she did not write that on the form, but predicted that a daughter, Phyllis Everetts, did. (R. at 48.)

Records Before the ALJ
The administrative record consists of documents related to Mr. Reid's application for disability benefits, Plaintiff's 1986 application for disability benefits, and Plaintiff's application for widow's insurance benefits.
Mr. Reid applied for disability benefits in May 1989, alleging a disability as of 1988. (R. at 85) He stated that he was not then married, and had been married only once, to Inez Huggins. (R. at 86.) He did not have any children eligible for benefits. (Id.) The "Authorization for Source to Release Information to the [SSA]" listed Plaintiff as Mr. Reid's landlady. (R. at 88.) Additionally, a narrative in the first person by "Josephine Everetts" describes Mr. Reid's health problems in a reconsideration disability report and also describes Mr. Reid as Ms. Everetts' tenant. (R. at 93, 95.) Mr. Reid's death certificate lists "Josephine Johnson" as his surviving spouse. (R. at 96.) Josephine Reid is listed as the person providing the background information on Mr. Reid; "Johnson" was her maiden name. (R. at 71, 74, 96.)
Plaintiff applied in April 1986 to receive Supplemental Security Income and listed Joseph Everett as her spouse. (R. at 75.) She listed his birth date, but checked the box labeled "Unknown" by the space for his social security number. (Id.) She also listed his current address simply as "Chicago, Il[linois]." (Id.) Five minor children and one grandson were listed as living with Plaintiffall six had "Everetts" as their last name. (R. at 77.)
Plaintiff listed her name as "Josephine Everetts" on her application for widow's insurance benefits, and "Josephine Johnson" as the only other name she has used. (R. at 52.) She signed the application as "Josephine Reid." (R. at 53.) In a hand-printed supplement to her application,[6] Plaintiff explained that before she and Mitchell Reid were married, they went to four different attorneys trying to get her marriage to Everetts annulled, but none would represent her because she did not know Everetts' social security number. *1023 (R. at 59.) In March 1996, Plaintiff's marriage to Everetts was annulled by decree of the St. Louis City Circuit Court for the State of Missouri. (R. at 73-74.) Joseph Everetts is described as being in default. (R. at 73.) The decree lists both the marriage date and the separation date as September 10, 1953. (Id.) The court further decreed that Plaintiff's marriage to Everetts was "declared null and void and of no force and effect `of initio[']." (R. at 74.)
The documents before the Appeals Council include an obituary for Plaintiff listing her name as "Josephine Everetts-Reid." (R. at 17-18.)

The ALJ's Decision
The ALJ found that Plaintiff ceremonially married Joseph R. Everett on September 10, 1953, in the State of Missouri, and that the marriage was annulled, in Missouri, on March 5, 1996. (R. at 24.) Plaintiff ceremonially married Mitchell Reid on February 23, 1983, in the State of Illinois. (Id.) Mr. Reid died on November 2, 1990. (Id.)
The ALJ concluded that "the weight of the evidence reasonably supports a conclusion that [Plaintiff] knew her previous marriage had not ended ... [and] therefore had knowledge that her marriage to the wage earner was not valid." (Id.) The ALJ determined that Plaintiff was not entitled to widow's insurance benefits, finding that Plaintiff's claims that she (i) was never married to Mr. Everett and (ii) was not aware that she was legally married to Mr. Everett when she married Mr. Reid were "not supported by the evidence" and were "not credible." (R. at 24-25.)

Legal Standards
Under the Social Security Act, 42 U.S.C. § 416(c)(5), a "widow" must be married to the wage earner for a period of not less than nine months immediately prior to the day on which the wage earner died. See 20 C.F.R. § 404.335. A woman will be considered the wife of a wage earner if the courts of the state in which such applicant and wage earner were domiciled would find that such applicant and wage earner were validly married at the time the wage earner died. See 42 U.S.C. § 416(h)(1)(A)(i).
The ALJ's decision is conclusive upon this court if it is supported by "substantial evidence." See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir.1997); Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir.1992). "Substantial evidence is that which a reasonable mind might accept as adequate to support the [Commissioner's] conclusion." Id. (quoting Whitehouse v. Sullivan, 949 F.2d 1005, 1007 (8th Cir. 1991)). Substantial evidence is also "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subjected to reversal on appeal." Bland v. Bowen, 861 F.2d 533, 535 (8th Cir.1988). Accordingly, an administrative decision which is supported by substantial evidence is not subjected to reversal merely because substantial evidence may also support an opposite conclusion. See Whitehouse, 949 F.2d at 1006; Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir.1989). See also Clark v. Heckler, 733 F.2d 65, 68 (8th Cir.1984) (if a court finds that there is a preponderance of the evidence against the ALJs' decision, that decision must nonetheless be affirmed if it is supported by substantial evidence).

Discussion
Plaintiff contends that she is entitled to widow's insurance benefits on the record of Mitchell Reid. To be entitled to such benefits, Plaintiff must have been married to Mr. Reid for a period of not less than nine months immediately prior to the day on which Mr. Reid died. See 42 U.S.C. § 416(c)(5). Moreover, Plaintiff is considered to be the widow of Mr. Reid if Missouri courts would find that she and Mr. Reid were husband and wife. See 42 *1024 U.S.C. § 416(h)(1)(A)(i). It is undisputed that Plaintiff and Mr. Reid were domiciled in Missouri. Thus, if under Missouri law Plaintiff and Mr. Reid were validly married at the time of Mr. Reid's death, Plaintiff is entitled to benefits.
Plaintiff argues in her motion for summary judgment that, under Missouri law, the annulment decree rendered her marriage to Everetts void; hence, her marriage to Reid was valid. Defendant counters that Plaintiff's marriage to Everetts was voidable; hence, the annulment was effective as of the date of the decree and did not otherwise render her concluded marriage to Reid legal.
Missouri law distinguishes between "void" and "voidable" marriages. A void marriage is invalid from its inception because the parties lacked the capacity to contract under state law. See Mo.Rev. Stat. § 451.020. While a minor generally lacks the capacity to contract, Missouri law provides that a marriage will be valid if one of the minor's parents consents to the marriage in writing. See Mo.Rev.Stat. § 451.090. Plaintiff does not dispute that her mother consented to her marriage to Everetts. A voidable marriage is treated under Missouri law as valid for all civil purposes unless it is annulled by decree. See Taylor v. Taylor, 355 S.W.2d 383 (Mo. Ct.App.1962). A voidable marriage results from fraud, error, duress, or other imperfect consent. Glass v. Glass, 546 S.W.2d 738, 740 (Mo.Ct.App.1977).
In Missouri, an annulment constitutes a judicial declaration that no marriage existed. See Id. The effect of a decree of annulment depends on whether the marriage is void or voidable. Id. A voidable marriage set aside by a decree of annulment is valid until disaffirmed by that decree; a void marriage is null from inception. Id. "`Voidable marriages are, of course, good for every purpose until avoided ... During the existence of the voidable marriage neither party can marry again."' Henderson v. Ressor, 265 Mo. 718, 178 S.W. 175, 177 (1915) (quoting 2 Nelson on Divorce and Separation, § 569) (emphasis added). Missouri courts hold that an annulment of a prior voidable marriage does not validate a second marriage begun before the annulment decree. See Jordan v. Missouri & Kansas Telephone Co., 136 Mo.App. 192, 116 S.W. 432, 435 (1909).
Plaintiff alleges that the ALJ erred when he held that the annulment of Plaintiff's marriage to Mr. Everetts did not relate back to the time of the marriage. Plaintiff argues that, in Missouri, an annulment is a judicial declaration that the marriage is not valid and was never valid due to a defect that existed at the time of the marriage.[7] According to Plaintiff, the 1996 annulment of her marriage to Mr. Everetts declared that marriage void from the outset.
Plaintiff mischaracterizes the effect of the annulment. Until the 1996 annulment, Plaintiff's marriage was not void  it was only voidable.[8]See Glass, 546 S.W.2d at 740. Under controlling Missouri law, Plaintiff's marriage to Mr. Everetts was valid from its inception until it was disaffirmed by decree in 1996. See Id. Thus, the annulment of Plaintiff's marriage to Mr. Everetts does not relate back in time *1025 to validate her marriage to Mr. Reid. See Jordan, 116 S.W. at 435.

Conclusion
For the foregoing reasons, there is substantial evidence on the record as a whole to support the ALJ's conclusion that Plaintiff was not the widow of Mr. Reid. The evidence includes, most notably, the lack of any divorce or annulment of Plaintiff's marriage to Mr. Everetts prior to her marriage to Mr. Reid.
Accordingly,
IT IS HEREBY RECOMMENDED that Sharon Everetts' Motion for Summary Judgment be DENIED. [Doc. 9]
IT IS FURTHER RECOMMENDED that the Commissioner's Motion for Summary Judgment be GRANTED. [Doc. 10]
IT IS FINALLY RECOMMENDED that a separate judgment be entered in favor of the Commissioner and against Sharon Everetts in the instant cause of action.
The parties are advised that they have eleven (11) days in which to file written objections to this Recommendation and the Memorandum incorporated herein pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir.1990).
May 18, 1999.
NOTES
[1] Josephine Reid died in November 1997. (R. at 12.) Sharon Everetts is her daughter and is a substitute party for Ms. Reid. See 42 U.S.C. § 404(d).
[2] References to "R." are to the administrative record filed by the Commissioner with his answer.
[3] In her application for widow's insurance benefits, Plaintiff describes some confusion about the year she was born. She was raised believing that she was born in 1934, but read in a family Bible in 1994 that she was born in 1934 or 1938. (R. at 51.) An aunt told her in 1986 that she was born in 1938, so she uses this year as the year in which she was born. (Id.) Her marriage license application for her marriage to Everetts lists her year of birth as 1938. (R. at 71.) She was fifteen when married to him. (Id.)
[4] The transcript refers to "Everett"; however, the correct spelling is clearly "Everetts."
[5] The records reflect that Plaintiff was 15 years of age when she married Everetts. See note 3, supra.
[6] Plaintiff's counsel stipulated to the receipt into evidence of various documents marked as exhibits. (R. at 38.) It appears from the record that her supplemental letter was included in these exhibits.
[7] Plaintiff cites Eyerman v. Thias, 760 S.W.2d 187 (Mo.Ct.App.1988), in support of this argument. Plaintiff's reliance on Eyerman is misplaced. In Eyerman, the court held that the annulment of a daughter's marriage revived the father's child support payments. The court in Eyerman distinguished that case from Glass on the grounds that Glass involved spousal support while Eyerman involved child support. The court specifically noted that "policy concerns regarding maintenance for an adult female versus support for a child are obviously different and require different legal treatment." Id. at 190.
[8] Although Plaintiff was under the age of consent at the time of her marriage to Mr. Everett, Plaintiff's mother consented in writing to the marriage, thereby validating the marriage. See Mo.Rev.Stat. § 451.090.